(Decided 21st June, 1871.)

ELISHA P. P. McCLURE *vs.* THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY.

*Contract between R. R. Co. and Passenger—Right of Conductor to put off a Passenger refusing to pay fare—Agency.*

M, on the 1st of May, purchased a through ticket from N. Y. to B. over the P., W., & B. R. R., and on that day took the through train. The conductor of the train took up the ticket and gave M. a "conductor's check," with the words "good for this day and train only," and with the numerals 5 and 1, showing the month and day, punched out of the "check." M, desiring to leave the train at a way station, inquired of some one at the window of the company's ticket office at the station, if the "check" would take him to B. on another train and day, and was told that it "was good till taken up." On the 6th of May, M entered another train going to B., and, being called upon for his ticket, offered the "check." The conductor refused to receive the "check,"·and M having refused to pay fare, the train was stopped at a point intermediate between two stations, and by direction of the conductor, M left the train. HELD :

1st. That M had no right to leave the train at the way station, and afterwards to enter another train and proceed to his original point of destination without procuring another ticket, or paying his fare.

2d. That on the refusal of M to pay his fare, the conductor had the right to put him off the train, using no more force than was necessary to effect his removal, and was under no obligation to put him off at a station.

McClure *vs.* Phil., Wil. & Balt. R. R. Co.

3d. That even if the person, by whom M was told that the "check" was good until taken up, was an agent of the company, the presumption is, that a ticket agent at a way-station has no authority to change or modify contracts between the company and through passengers, and the *onus* of rebutting this presumption rested on M.

APPEAL from the Superior Court of Baltimore City.

The facts are given in the opinion of the Court.

At the trial below, the plaintiff offered the following prayers:

1. Even should the jury find from the evidence that the conductor of the train in question had a right under the regulations of the company, and the contract made with the plaintiff, should they find such contract, to put the plaintiff off the train in question, the plaintiff is entitled to recover, if they find that in so doing he acted in an unwarrantable manner, as to time or place or mode thereof.

2. That even should the jury find from the evidence that the plaintiff would have been confined by the terms of his ticket to the particular train on which he then was; still, if they further find that before leaving said train, the plaintiff, as a matter of precaution, enquired of an authorized agent of the company, whether he would be permitted to lie over under the check he then held, and was informed that "he would be," that said check was good until taken up, then the fact of his ticket or check having contained any such instruction, would not of itself prevent the plaintiff from recovering.

3. Even should the jury find from the evidence that the conductor of the train in question had a right to put the plaintiff off; the plaintiff is entitled to recover, if they find from the evidence, that in so doing, the conductor required him to leave while the train was in motion, or put him off at a place where there was no station.

4. Even if the jury should find from the evidence that the conductor of the train in question, had a right to put the plaintiff off, the plaintiff is entitled to recover, if they find from the evidence, that in so doing, the said conductor put

him off at a place where there was no station or house near at hand, or any adjacent place for shelter or food, or at any unusual place.

The following instruction was asked by the defendant:

If the jury shall find from the evidence that the plaintiff, on the 1st day of May, 1867, purchased at New York, a through ticket from that place to Baltimore, over the New Jersey railroad and P. W. & B. R. Road, and on that day proceeded on his journey as far as Perryville, on the last named road, where he left the train; and if the jury shall further find that after passing Philadelphia, the then conductor of the train took up said through ticket and gave plaintiff the check in lieu thereof, which has been offered in evidence; and if the jury shall further find that the plaintiff, on the 6th day of said May, got upon the defendant's train for Baltimore at Havre-de-Grace, and the then conductor refused to take said check, but informed the plaintiff that he must pay his fare to Baltimore, or he would be obliged to stop the cars and put him off, and that the defendant refused to pay said fare, and the said plaintiff was then put off, then the plaintiff is not entitled to recover in this case; provided the jury shall find that no more force than was necessary was used in putting said plaintiff off the train, even if the jury shall further find, that on arriving at Perryville on the train, on the said first day of May, the plaintiff enquired from a man at the window of the ticket office of the defendant at that place, whether said check would be good to take him on to Baltimore another day, and was told by said man that it would.

The Court rejected the first, second and third prayers of the plaintiff, and granted the fourth, as also the prayer of the defendant. The plaintiff excepted to the ruling of the Court in rejecting his prayers and granting the prayer of the defendant, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, MAULSBY, GRASON, MILLER and ALVEY, J.

*Albert Ritchie*, for the appellant, cited the following authorities:

*Balto. & O. R. R. vs. Blocker*, 27 *Md.*, 277; *Goddard vs. Grand Trunk R. R.*, 10 *A. L. R.*, 17; *Terre Haute A. & St. L. R. R. vs. Vanatta*, 21 *Ill.*, 188; *Du Laurans vs. St. P. & P. R. R.*, 15 *Minn.*, 49; *Holmes vs. Wakefield*. 12 *Allen*, 580; *Sanford vs. 8th Av. R. R.*, 23 *N. Y.*, 343.

*Thomas Donaldson*, for the appellee, referred to

*Balto. C. Pass. R. vs. Wilkinson*, 30 *Md.*, 224; 2 *Redfield on R.*, 219; *C. C. & C. R. R. vs. Bartram*, 11 *Ohio*, 457; *Cheney vs. B. & M. R. R. Co.*, 11 *Met.*, 121; *Beebe vs. Ayres*, 28 *Barb.*, (*N. Y.*,) 275; *Johnson vs. Concord R. R.*, 46 *N. H.*, 213; *State vs. Overton*, 4 *Zab.*, 435.

GRASON, J., delivered the opinion of the Court.

At the trial of this case in the Court below the plaintiff offered four prayers, the last of which was granted and the others were rejected, and the defendant offered one prayer which was granted. The plaintiff excepted to the rejection of his first three prayers and to the granting of the defendant's prayer, and the judgment being against him, he has taken this appeal.

The first question to be considered is, whether a person, who has purchased a through ticket from New York to Baltimore, taken his place in a train, and entered upon his journey, has the right to leave the train at a way-station on the route, and, afterwards, to enter another train and proceed to his original point of destination, without procuring another ticket or paying his fare from the station at which he again enters the car. We think it clear that he cannot.

The contract between the parties is that upon the payment of the fare the company undertakes to carry the passenger to the point named, and he is furnished with a ticket as evidence that he has paid the required fare and is entitled to be carried to the place named. When the passenger has once elected the train on which he is to be transported, and entered upon his journey, he has no right, unless the contract has been modified by competent authority, to leave the train at a way-station and then take another train on which to complete his journey, but is bound by the contract to proceed directly to the place to which the contract entitled him to be taken. Having once made his election of the train and entered upon the journey, he cannot leave that train, while it is in a reasonable manner in the undertaking of the carrier, and enter another train without violating the contract he has entered into with the company. "A contrary doctrine would necessarily impose upon the carrier additional duties, the removal of the passenger and his baggage from one train to another, and the consequent additional attention on the part of the company; also an increased risk of accidents, and a hindrance and delay, not contemplated by a reasonable interpretation of their undertaking." *C. C. & C. R. R. Co. vs. Bartram,* 11 *Ohio,* 463; *State vs. Overton,* 4 *Zabriskie's Rep.,* 438; 2 *Redfield on Railways,* 219.

In the case now under consideration the appellant, on the 1st day of May, 1867, purchased a through ticket from New York to Baltimore, and on that morning took his place in the through train and entered upon his journey, and some miles south of Philadelphia his ticket was taken up, according to custom, by the conductor of the appellee's train, who gave him in its stead what is called a "conductor's check," with the words "*good for this day and train only,*" printed upon one side, and a list of stations, and numerals on the other; the numerals indicating the months and days of the month. The numerals 5 and 1 were punched, showing that this conductor's check had been used on the appellee's train,

McClure *vs.* Phil., Wil. & Balt. R. R. Co.

on the 1st day of May. It is clear, therefore, that the appellant had notice that the check, thus delivered to him in the place of his ticket, could be used only on that day and train. When the train arrived at Perryville, the appellant, desiring to go to Port Deposit to remain a few days, sought the conductor for the purpose of ascertaining from him whether the conductor's check which he held would take him to Baltimore on another day and train. Not finding the conductor, he asked a person whom he saw standing at the window inside the ticket office of the appellee at that place, and was informed by him that it "was good till taken up." The appellant entered another train of the appellee on the 6th day of May, at Havre de Grace, having a Mrs. Taylor in his company, and after proceeding some distance was called upon by the conductor for his ticket. He handed him Mrs. Taylor's ticket, procured before entering the train, and the conductor's check, which he had received from the other conductor on the 1st day of the month. He was told by the conductor that the check was not good, and that he must give a ticket or pay the fare. The appellant then explained to the conductor what had occurred at Perryville five days before, and that the agent there had informed him that the check was good until it was taken up. The conductor again said that it was not good and that the appellant must give him a ticket or pay his fare or be put off the train. The appellant still declining to pay, the conductor rang the bell to stop the train, and either after the train had stopped, or when it had nearly stopped and was moving very slowly, the conductor either beckoned or nodded his head to the appellant, who immediately left his seat, went to the platform of the car and stepped off the train. He then walked to Aberdeen, two and a half or three miles off, purchased a ticket and took another train of the appellee three or four hours afterwards, and went to Baltimore. The appellant and Mrs. Taylor both testified that the conductor seemed to be very angry and excited; that they thought so from the violence with which he pulled the

bell-rope to stop the train. The conductor testified that he controlled the train by the bell-rope, and that it was always necessary to pull it violently to insure the ringing of the bell, and, in long trains, to take up the slack of the rope. There is no proof of any anger or excitement whatever, except as regards the manner of pulling the bell-rope. There is some conflict in the evidence as to the fact whether the train had stopped when the appellant left it; but be this as it may, it is certain that it was moving very slowly at the time. The bell had been rung to stop the train; it would, no doubt, have come to a full stop if the appellant had waited a moment longer before getting off. The conductor used no force whatever to put him off, did not require him to get off while the train was in motion, and did not touch or say a word to him. It therefore appears that if the appellant did leave the train while it was in motion, that he did so voluntarily and without injury to himself. Upon the refusal of the appellant to pay his fare to the conductor he had the undoubted right to put him off the train, using no more force than was necessary to effect his removal, and the proof shows that he used none whatever. We cannot concur in the doctrine, contended for by the counsel of the appellant, that a passenger, having no ticket and refusing to pay his fare, can only be put off at some *station* on the road. The establishment of such a principle would result in compelling railroad companies to carry a passenger to the station next to the one at which he entered the train, which might, and doubtless would often turn out to be, the very point to which he desired to be taken, and if the passenger were unknown to the conductor the company would be without remedy.

It is claimed, however, that the appellant was authorized, by the information received from the agent of the appellee at Perryville, to use the conductor's check received by him on the first day of May, and, therefore, that it was unlawful to compel him to leave the train. There is no evidence to prove that the person, from whom the appellant received the infor-

McClure *vs.* Phil., Wil. & Balt. R. R. Co.

mation, was an agent of the appellee. But even if there was proof to establish that fact, the presumption is, that a ticket agent at a way-station has no authority to change or modify contracts between the company and its through passengers, and the *onus* of rebutting such presumption rests upon the appellant; but upon this point he offered no proof whatever. The check held by the appellant showed upon its face that it was good on the 1st day of May only, and upon but one train on that day, and the prescribed numerals showed to the conductor, to whom it was offered, that it had been used on that day; the conductor had, therefore, the right to reject it, and to require the appellant to furnish a ticket or pay his fare, and upon his failure to do either, to compel him to leave the train.

There was no evidence to show that any violence whatever was used in effecting his removal from the train, or that he was compelled to leave it at an improper time, and the first three prayers of the appellant were properly rejected; the fourth, which was granted, having left it to the jury to find whether his removal from the train was at an unusual or improper place. The appellee's prayer fairly presented the law of the case to the jury, and it was properly granted. There being no error in the rulings of the Court below, its judgment will be affirmed.

*Judgment affirmed.*

(Decided 22d June, 1871.)

MAULSBY, J., dissented.