FRANK E. WALKER, Respondent, v. WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY, Appellant.

April 1, 1884.

1. COMMON CARRIERS — PASSENGER TICKETS. — A railway company is not bound to carry the purchaser of a limited ticket only where such passenger pursues the journey continuously.

2. —— The holder of such a ticket is not, after beginning the journey, entitled to stop off at an intermediate point and subsequently resume the journey.

3. —— TRANSFER OF TRAIN CHECK. — The purchaser of a "train check" issued to another person upon a limited ticket and expressed to be good only for a continuous passage, is not entitled to subsequently pursue the the journey begun by the purchaser of the ticket, though the check be offered for passage within the time limited thereon.

APPEAL from the St. Louis Circuit Court, BARCLAY, J. *Reversed and judgment.*

GEORGE B. BURNETT and GEORGE S. GROVER, for the appellant.

R. CRAWFORD, for the respondent.

THOMPSON, J., delivered the opinion of the court : —

The plaintiff, desiring to go from St. Louis to Chicago, thought he would save a little money by buying a ticket of a broker. So he went to the office of Mr. Manget, on the corner of Fifth and Chestnut Streets, and purchased a train check, which, with the punches in it, presented the following appearance : —

| ½ | Limited. | ONE O | 159 | 219 | 239 | 265 | 501 | 601 | 713 | 801 | 885 | 1096 | 1524 | 1556 | 1632 | ONE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | 219 |
| | | | | | | | | | | | | | | | | 239 |
| W., ST. L. & P. RY.    Train Check | | | | | | | | | | | | | | | | 265 |
| 1883. GOOD FOR CONTINUOUS PASSAGE ONLY.    (c. 17). CONDITIONS : — This check is good only for continuous passage on regular passenger trains, AND MUST BE USED BEFORE 12 O'CLOCK MIDNIGHT, of date punched in margin. If presented    H. C. TOWNSEND. afterwards the conductor will take it up    F. CHANDLER, and collect fare.    General Ticket Agent. | | | | | | | | | | | | | | | | ● 1 |
| | | | | | | | | | | | | | | | | 601 |
| | | | | | | | | | | | | | | | | 713 |
| | | | | | | | | | | | | | | | | 801 |
| | | | | | | | | | | | | | | | | 885 |
| | | | | | | | | | | | | | | | | 1096 |
| JAN | FEB | MAR | APR | MAY | JUN | J●L | AUG | SEP | OCT | NOV | DEC | | | | | 1524 |
| 43000 | VIA ST. LOUIS. | VIA SHORT LINE. | * 9 | * 8 | ● 7 | * 6 | * 5 | ● 4 | 3 3 | 2 2 | ● 1 | 0 0 | | | | 1556 |
| | | | | | | | | | | | | | | | | 1632 |

This train check, it will be perceived, does not purport to be a regular passage ticket. The name of the place from, and the place to, which the holder is to be carried, is not stated. On the reverse side, it is countersigned in ink by the conductor by whom it is issued to the passenger; and the particular check was, in fact, issued by one of the defendant's conductors, to a passenger other than the plaintiff, who had taken passage on one of the defendant's trains the day previous at Council Bluffs, upon a limited ticket, for Chicago, by way of St. Louis. It seems that this passenger had traveled as far as St. Louis, when he had left the train, and sold this train check to the broker from whom the plaintiff bought it. With this, he went with his baggage to the Union Depot, and there presented it to the porter of the defendant's evening train, who allowed him to get aboard. It also passed the inspection of the bridge conductor; but when the train had got beyond the bridge, the regular train conductor came around, examined it, told the plaintiff that it was not good, and that he would have to pay fare or get off at the next station. The plaintiff declined to do either, and the conductor and porter put him off without unnecessary violence, at a station called Edwardsville, eighteen miles from St. Louis. He stayed all night at Edwardsville, came back to St. Louis the next morning, and afterwards bought a ticket, and again started for Chicago, according to his original plan. This statement indicates substantially the amount of damage which he suffered. For this damage he brought the present action, and a jury gave him five hundred dollars.

At the trial, the defendant put in evidence a book of instructions issued by the defendant to conductors and agents, which starts out by saying that "in order to prevent the scalping of limited and unlimited first-class tickets, reading between prominent points on this company's lines, it is deemed advisable to take up such tickets on first presentation and issue a 'continuous passage train check' in

exchange ; and for the proper issuance of continuance pas-
sage train checks, the following rules are given.'' Then
follows a series of minute directions in regard to the issuing
and punching of train checks ; the cautions which are to be
given to the passengers to whom such checks are given ;
what reports conductors are to make touching the same ;
what they are to do in the case of a misunderstanding with
the passenger, and the like. The numbers by which the
leading stations on the defendant's lines of road are desig-
nated on these train checks, are also given, from which it
appears that Council Bluffs is designated by the number
885 ; St. Louis by the number 601, and Chicago by the
number 501. When these train checks are issued in ex-
change for a limited passage ticket, which the conductor
takes up, he is required to punch the word '' limited '' in
the margin of the check. With these instructions in view,
recurring to the train check which this plaintiff had bought,
it is seen that the number 885, in the column marked
'' from '' in the tint, was not punched. According to the
instructions, this should have been done by the defendant's
conductor when he issued the check to the passenger. It
also appears that the word '' limited '' was not punched, as
the rules required. It further appears that in the column
marked '' to '' in the tint, the figure 501 was punched.
Then at the bottom of the check, there were punched the
word '' July,'' the figure 1 in the left-hand column of
figures, and the figure 9 in the right hand column of figures.
The punch marks indicated, according to the instructions
put in evidence, and also in accordance with what appears
on the face of the check, that the check would not be good
unless used before midnight of the 19th of July, 1883. In
this regard, also, the defendant's conductor had not punched
the ticket according to the instructions, which prescribe
that '' checks must be limited to one day from date of issue.
For instance, a check issued on January 1st must be
punched to expire on January 2d.'' This check was issued

by the defendant's conductor, to a passenger, as already stated, on the 17th of July, and was punched to expire on the 19th. The train on which this passenger was, arrived in St. Louis on the morning of the 18th, it would seem, on the usual time. The defendant's next regular train for Chicago left St. Louis half an hour later, namely, at eight o'clock in the morning; so that it appears that the train on which this plaintiff took passage for Chicago was not a continuous train in respect of the train on which the previous holder of the ticket had arrived in St. Louis. Paragraph 108 of the defendant's instructions to agents and conductors, already referred to, is as follows: "These checks, when issued in accordance with the foregoing instructions, will be treated as valid passage tickets, and they will be subject to the same rules concerning 'trip cancellations' that are now in force for regular tickets; such cancellations, however, must be made in that portion of the check designated by stars (*  *  *), and, of course, these cancellations will be regarded as additional to those above mentioned." There is no evidence that these instructions are communicated to the public, or to ticket brokers, or to any persons except the defendant's conductors and agents, for whose guidance they are intended. We mention this fact because it seems important to take it into consideration in determining whether the public are entitled to buy these checks of any one who may happen to hold them, just as they are entitled to buy an unused passage ticket, and to compel the railway company issuing the same to a performance of the contract thereby expressed.

It is quite clear that a train check, such as the one which this plaintiff bought, punched as it was punched, affords an unscrupulous broker the means of practicing a fraud upon a traveler. A broker, with a copy of these instructions to conductors and agents in his hand, could explain to the traveler that the word "limited" had not been punched out, and, therefore, that it had not been given in exchange

for a limited passage ticket.  He might further explain to him that the figures " 885 " had not been punched out, and, therefore, that it did not appear from the check that it had been given to a passenger who had started from Council Bluffs, and, hence, that it did not appear that it had been given for a passage a part of which had been performed. He might also draw inferences in favor of the goodness of the check, from the fact that, in addition to the date of the transaction, it had another whole day to run.   But whilst this is so, it does not appear upon what principle a traveler can have a right to regard such a check as a promise on the part of the company to transport any person until the date named from St. Louis to Chicago, neither of which places is named upon its face.   Moreover, the check purports on its face to be good only for a continuous passage, and it does not appear upon what ground a member of the public could infer from this that one man has a right to travel on it over one portion of the route for which it is given and another man a right to travel on it over the remaining portion.   It is quite clear, therefore, that the holder of this check was not entitled to regard it as an ordinary passage ticket.

The defendants prayed at the close of the plaintiff's testimony, and again at the close of the whole case, an instruction in the nature of a demurrer to the evidence, which the court refused to give.   The court refused all the instructions prayed by the defendant, and in lieu thereof gave the following instruction of its own motion : " The jury are instructed that the ticket read in evidence was valid for one continuous passage on regular passenger trains of defendant (if presented before 12 o'clock midnight of July 19, 1883), to Chicago from the point where such ticket was delivered to a passenger on some of defendant's trains ; and if the jury find from the evidence that said ticket was so issued by defendant at some point westward of St. Louis to a passenger on some train of defendant then bound to St.

Louis, and that after the arrival of said train at St. Louis the train which plaintiff took for Chicago was the next regular passenger train of defendant leaving St. Louis for Chicago, and that plaintiff was ejected at Edwardsville Junction from said train, after having duly exhibited said ticket to the conductor of said train before midnight of July 19, 1883, then the jury should return a verdict for plaintiff.''

We take the view that the court erred in refusing the defendant's instruction in the nature of a demurrer to the evidence, and also in giving the above instruction of its own motion.    Recurring to the plaintiff's petition, it will be perceived that the plaintiff avers that, on the 18th of July, 1883, the defendant, for a reward, undertook to carry the plaintiff as a passenger from St. Louis, Missouri, to Chicago, Illinois.    Now he proves no such undertaking.    He merely proves that he purchased, not of the defendant, but of a ticket broker, a cabalistic printed card called a train check, which had some marks of conductor's punches upon it, and which did not purport to be an agreement to carry any one from St. Louis to Chicago.    This did not at all make out the averment just recited from the petition ; and the defendant, therefore, should have had the peremptory instruction which it prayed at the close of the plaintiff's case.    Then, when the defendant's case was opened, the meaning of this printed card was developed, and it appeared beyond question that it was in the nature of a private token, intended, by the aid of a private book of rules and explanations, to pass the holder from one of the defendant's conductors to another, over a long line of travel ; that it had not been sold by the defendant to this plaintiff, nor to any one else, but that a limited passage ticket had been sold by the defendant to another person, by which the defendant had obligated itself to carry the holder of such ticket from Council Bluffs to Chicago by way of St. Louis ; that such holder had entered upon the performance of such journey ; that thereupon the defendant's conductor had taken up his

passage ticket, and had given him this card in exchange for the same, neglecting to punch it according to the instructions; that, by this card or train check, the defendant recognized its obligation to carry such passenger to Chicago on that continuous passage. But clearly it did not thereby agree to carry such passenger to St. Louis and then to carry some one else to Chicago. The agreement to carry the holder on a continuous passage expresses what we understand to be the obligation which the company stood under by law at the time when the conductor issued this train check; for, in the absence of an agreement, of a statute, or of public usage to the contrary, it is the settled law that when a person purchases of a railway company a passage ticket from one point to another point, and enters upon the performance of the journey, the company is obliged to carry him only in the event that he continues upon its vehicle until the transit is ended. *McClure* v. *Railroad Co.*, 34 Md. 532; *Dietrich* v. *Pennsylvania Railroad Co.*, 71 Pa. St. 432; *Churchill* v. *Chicago, etc., Railroad Co.*, 67 Ill. 391; *Hatten* v. *Railroad Co.*, 13 Am. & Eng. Ry. Cas. 53. The transit is an entire thing; the passenger can not oblige the carrier, nor can the carrier oblige the passenger to split it up into parts and to perform it piecemeal; and the reason is that it costs the company more, and that its risk is greater when the transit is broken up into parts than when it is performed continuously, because, in the latter case, there is at each section of the transit the loading and unloading of baggage.

It is very clear, then, if the passenger can not compel the carrier to perform his contract in sections in respect of himself, after he has entered upon the transit, for stronger reasons, he can not compel the carrier to allow him to leave its train wherever he may choose, and to introduce a third person, who is to perform the journey in his place. Moreover, if the contract does not allow the passenger the privilege of stopping off at a particular place, it is still more difficult to understand any principle upon which he is entitled to stop

off at such place, and then, instead of resuming the journey himself on a subsequent train, to introduce some one else in his stead, and compel the carrier to complete the contract by carrying such other person on a subsequent train.   No decision has been cited to us which countenances such a construction of the obligation which a railway carrier assumes when it sells a limited railway passage ticket, and we do not know of any such decision.   It is very clear, then, that the defendant was entitled to the peremptory instruction prayed for at the close of the whole case.

Then, as to the instruction which the court gave of its own motion, it is self-contradictory.   It tells the jury that the check was valid for one continuous passage, and yet, it tells them that two men can ride on it, one succeeding the other at a point on the line of continuous passage.   In other words, it makes the words "continuous passage," on the face of the check refer to a continuous passage of the defendant's trains, or of the check, and not to a continuous passage of the passenger to whom it is issued.   This, we take it, is not the meaning of the words.   If this were the meaning, as many men could station themselves along the defendant's line as there are stopping places between the point where such check is issued to the passenger and the point for which the ticket has been purchased.   The first holder of the check could get off at the first stopping place with his baggage, and hand the check to the man there in waiting, and he could get on the train with his baggage, ride to the next stopping place, leave the train with his baggage, hand the check to the man there in waiting, who might repeat the operation; and so on, from man to man, until the whole transit was completed; in the course of which fifty different passengers might be carried over fifty segments of the route, and the defendant's baggage-men might be obliged to handle baggage a hundred times.   The continuous passage referred to in the check is the continuous passage of the person to whom it was first issued, and of no other person; and this person

can not, without the consent of the carrier, introduce another person in his stead. The giving of this instruction, then, was an error. The judgment must be reversed. As the undisputed facts of the case show that the plaintiff has no right of action, we shall not remand the cause, but judgment will be rendered here for the defendant. It it so ordered. All the judges concur.