DANIEL B. RUDY, RESPONDENT, *v.* RIO GRANDE WESTERN RAILWAY COMPANY, APPELLANT.

RAILROADS.—PASSENGERS.—EJECTION.—GOOD FAITH.—Whether or not a person who was attempting to ride on an expired railroad ticket believed, in good faith, that he had such a right, can in no way affect the right of the railroad company to eject him from the train.

ID.—ID.—ID.—PLACE.—Where there is no statute of the state or territory where the ejection is made, in regard to putting off passengers, the railroad company has the right to expel a passenger, who is riding on an expired ticket and refuses to pay his fare, from the train at any place, so that, however, the passenger is not unreasonably exposed to danger.

COMITY BETWEEN STATES.—PRESUMPTION AS TO STATUTE.—*Semble* that the presumption of law is, when a right is claimed to have been violated by an act committed in another state, that the law of that state is the common law and not the law of the forum.

APPEAL from a judgment of the district court of the third district and from an order refusing a new trial. The opinion states the facts, and see *Nichols* v. *Railway Co.,* 7 Utah, 510.

*Messrs. Bennett, Marshall and Bradley, Mr. Robert Harkness,* of counsel, for the appellant.

*Mr. Orlando W. Powers,* for the respondent.

ANDERSON, J.:

This is an action by the plaintiff against the defendant to recover damages alleged to have been sustained by plaintiff by reason of having been put off of a train on defendant's road by the defendant's servants. There was a verdict and judgment in favor of the plaintiff for the sum of $1,000. The defendant made a motion for a new trial, which was overruled by the court, and the appeal is from the judgment and from the order overruling this, motion. On the 11th day of August, 1890, the plaintiff purchased at Kansas City, Missouri, from the agent of the Union Pacific Railway Company, a coupon second-class ticket, entitling him to ride over the Union Pacific Railway to Denver, Colorado, and from there over the Denver & Rio Grande Railway to Grand Junction, in the state of Colorado, and thence over the defendant's road to Salt Lake City. The ticket was in the form of a contract, and was signed by the plaintiff, and provided that "any line over which it reads may decline to honor the ticket, unless presented in time to reach its destination by or before midnight of the date punched in the margin;" and, "if not so used, * * * this ticket is void, and the conductor will take it up and collect full fare." The time limited by the ticket expired at midnight, on August 15th. While on the Denver & Rio Grande road the plaintiff was delayed by washouts, and also by voluntarily leaving the train on two occasions, and permitting it to proceed without him; so that when he reached the defendant's road at Grand Junction it was 12:30 A. M. of August 17th. Here he had to change cars, and some one in the uniform of defendant's servants directed him to the second-class coach in the train on defendant's road. The next station west of Grand Junction is Fruita, distant about ten miles, and here there was a station house and the ordinary accommodations for travelers, while west of Fruita about seven

miles was a signal station called "Crevasse," where there were no accommodations for travelers. No one lived there, and there were no buildings of any kind there. The nearest dwelling houses were some ranch houses a mile or a mile and a half distant, and which were scattered along back to Fruita. Before reaching Fruita, the conductor on the defendant's road demanded of plaintiff his ticket, which plaintiff showed him, when the following colloquy occurred, as testified to by plaintiff: "The conductor told me my ticket was no good; that it had run out; and he demanded that I pay fare. He demanded $20.05, which he said was the fare from Grand Junction to Salt Lake City. I had ridden on the train from Grand Junction. I had sufficient money in my pocket to pay the fare, but I told him I had paid for my ticket, and I did not think I owed the company anything more. He said I would have to get off if I did not pay. All this took place before the train got to Fruita. I told him to go through the train, and when he came back I would tell him about the washout. And I told him when he came back I would decide whether I would pay or not; that I would make up my mind what to do. I knew at that time I would have to pay or leave the train. About twenty minutes afterwards the train stopped at Fruita. At that time I made up my mind that I did not owe the company anything, and that I would not pay anything more. The conductor came back to me afterwards, and I told him that I was not going to pay; that I did not owe the company anything; I had it in my pocket, and was able to pay, but that it was my money. He offered to give me a receipt for the money, and I told him I would pay if he would guarantee to me that I would get it back. He offered to give me a receipt, but no guaranty. He said he would give me a receipt, and I could get my money back in Salt Lake City, if they found fit to pay me back. I don't recollect that he said the money would be repaid to me if it was found that my

ticket entitled me to ride over the road. The conductor did not offer to use any violence towards me. I said nothing about suing the company for damages. Some people call the place where I was put off a way station. It is the first one I ever saw. There was a long side track there, but no platform. It was a dark night, no moon, but I could see the surrounding country so as to know it again when I passed it again next day. The place was about ten miles from Fruita. That is what the agent told me at Fruita." The plaintiff was ejected from the train at Crevasse, in the state of Colorado, on the night of August 17, 1890, about one o'clock A. M. Crevasse is seven miles west of Fruita. The next station west of Crevasse is Cisco, distant about thirty-four miles. The defendant had a rule in force that its conductors should collect full fare from all passengers not provided with a ticket, and that they should not receive an expired ticket, and that if a passenger presented an expired ticket the conductor should require him to pay his fare or leave the train.

The court instructed the jury that the plaintiff had no right to ride on the defendant's train after the five days limit in his ticket had expired. The court also, in instruction No. 2, instructed the jury that if, when plaintiff got on defendant's train at Grand Junction, "he in good faith believed he had a right to ride upon it, then the defendant or its agents had no right to compel him to get off the train — out of the car and off the train — in the nighttime, at a place where there was no station house or other building near by in which he could secure shelter. They had no right to compel him to get off under such circumstances, in a desolate place, or where there were no buildings in which he could find lodging and shelter, and had no right to compel him to get off at a dangerous place." Counsel for defendant excepted to so much of this instruction as charged the jury that, under the circumstances named, the defendant would have no right to put the

plaintiff off at any place where there was no station house or other building in which he could find shelter, and assigns the giving of the same as error. The court also, in instruction No. 3, told the jury that "if you believe, from the preponderance of the evidence, that the defendant, through its agents, compelled the plaintiff to get off the train on which he believed he had a right to ride in good faith, or under the circumstances I have mentioned, in the nighttime, in the desert, at a place where there was no station house or other building in which he could find shelter or lodging; or if you believe from the preponderance of the evidence, under the circumstances which I have stated, that he was compelled to get off at a dangerous place—then you should find a verdict for the plaintiff; otherwise if you believe that he did not get upon the train believing that he had a right to ride on it in good faith, or that he was not put off at a place where there were no buildings or accommodations of any kind, or no place where he could obtain lodging and shelter, or that the place was not a dangerous place, then you should find a verdict for the defendant. The same exception was taken to this instruction as was taken to instruction No. 2.

We think the right of the defendant to require the plaintiff to get off the train for refusal to pay his fare was in no way affected by any belief he may have entertained as to his right to ride on his ticket after it had expired. But, if the law were otherwise, the plaintiff's ticket showed on its face it had expired before reaching Grand Junction; and between Grand Junction and Fruita he was told by the conductor that his ticket had expired, and that he must either pay fare or get off the train. He testified that he had made up his mind when the train reached Fruita not to pay fare. It was his duty, then, to have left the train at that point, and from that time, at least, he was not a passenger in good faith, but was a willful trespasser, by remaining on the train. The plaintiff was

put off the train in the state of Colorado, and no proof was introduced to show that there is any statute in that state in regard to ejecting passengers from railroad trains. The statute of Utah (§ 2354, 2 Comp. Laws) provides that "any passenger refusing to prepay his fare or toll on demand may be put off the cars at any stopping place the conductor or employes of the company may elect." But we cannot presume that the Utah statute, or one similar to it, has been adopted in the state of Colorado. *Throop* v. *Hatch*, 3 Abb. Pr. 27; Lawson, Pres. Ev. 372; *Ellis* v. *Maxson*, 19 Mich. 186; *Bundy* v. *Hart*, 46 Mo. 462; *Whitford* v. *Railroad Co.*, 23 N. Y. 165; *Murphy* v. *Collins*, 121 Mass. 6; *Harris* v. *White*, 81 N. Y. 544. Where there is no statute requiring the ejection of a passenger refusing to pay his fare at a station, he may be ejected at any place, provided he be not thereby exposed unreasonably to danger; and the carrier is not obliged to put him off at a station, dwelling, or usual stopping place. *Wyman* v. *Railway Co.*, 34 Minn. 210, 25 N. W. Rep. 349; *Railroad Co.* v. *Miller*, 19 Mich. 305; *McClure* v. *Railroad Co.*, 34 Md. 532; *Brown* v. *Railroad Co.*, 51 Iowa, 235, 1 N. W. Rep. 487; *Lillis* v. *Railroad Co.*, 64 Mo. 464; *Railway Co.* v. *Rogers*, 28 Ind. 1; *O'Brien* v. *Railway Co.*, 15 Gray, 20. In *Brown* v. *Railroad Co.*, cited above, it is said that, "in exercising the right of ejection, reasonable and ordinary care should be employed, In determining whether such care has been exercised, all the circumstances should be considered, as the physical condition of the person ejected; the time, whether in daylight or late at night; the condition of the country, whether thickly or sparsely settled; the place of ejection, whether near or remote from dwellings of any character, including stations; the character of the weather, whether pleasant or inclement, etc. The rules of law, as well as the dictates of humanity, require that the ejection shall occur at such place, and be conducted in such a manner, as not unreasonably to expose

the party to danger." We think these observations emi-
nently just and correct in any case where there is not
shown to be a statute requiring that passengers can be
ejected only at a regular station or stopping place.

The defendant requested the court to instruct the jury
that, "if the jury believe from the evidence that before
arriving at the station of Fruita the plaintiff was informed
that his ticket would not entitle him to ride upon the
train, then, if there was a station house at Fruita, it
became his duty to get off at that station, if he had then
made up his mind not to pay his fare; that thereafter he
was no longer a passenger in good faith." The court
refused to give this instruction, and in lieu thereof gave
the following: "(8) It will be for the jury to determine,
in the light of all the evidence, whether the plaintiff in
good faith believed he had a right upon this train. If he
actually believed in good faith that he had a right upon
this train, then he had a right to wait until he was com-
pelled to get off." To the giving of this instruction, and
to the refusal to give the one requested, the defendant
excepted. We think the court erred in both instances.
The defendant's only right to eject plaintiff was because
he was wrongfully on the train. If the plaintiff's belief
that he had a right to ride on the train gave him such
right, then the defendant could not lawfully eject him.
As before stated, we think that the belief of the plaintiff
that he had a right to ride on the train after his ticket
had expired in no manner affected the rights of either
party. Under the evidence, as the case was tried in the
district court, plaintiff's counsel conceding that plaintiff
had no right to ride on the train after his ticket had
expired, and it not having been shown that there was a
statute in the state of Colorado requiring that passengers
refusing to pay fare should be ejected only at a regular
station or stopping place, the only question affecting defend-
ant's liability, to be submitted to the jury, was whether

the plaintiff was ejected at a place or under circumstances which unreasonably exposed him to danger, and, if so, the extent of the injury he received and the amount of his recovery. The instructions given by the court are to the effect that the defendant owed plaintiff a different duty, if plaintiff believed he was entitled to ride, from what it owed him if he had no such belief. For this error we think a new trial should be granted. At the trial plaintiff was permitted to testify against the objections of the defendant that the defendant refused to settle with him after he reached Salt Lake. While we think this evidence was immaterial, and should have been ruled out, yet we do not think it was of itself sufficiently prejudicial to the defendant to justify a reversal of the case. For the errors in the instructions herein referred to the cause is reversed and remanded, and a new trial ordered.

BLACKBURN, J., and MINER, J., concurred.