Mr. Justice Morris
delivered the opinion of the Court:
*350 We are of opinion that that court was entirely right in its decision.
In the argument before us, it was conceded that the appellant was a trespasser on the company’s trains; that he was there without right; that his ticket was worthless; and that the company was fully justified in ejecting him from the train. The sole question made before us was whether there was justification for ejecting him, at the time and placfe, and under the circumstances of the ejectment. It was urged that he should not have been put off in the face of the coming storm, and at a place where there was no shelter provided for him; and that he should have been carried to the next regular station and there put off. And it is* claimed that it ought to have been left to the jury.to determine whether the place was a safe place, and whether there was contributory negligence on the part of the appellant as charged.
We cannot for a moment entertain the theory that a railroad company, finding a trespasser upon one of its trains who has no right to be there and whom it is entitled to remove, cannot eject him except at some regular station of the company. The establishment of such a theory would break up the business of all the railroads in the country. If persons intent on defrauding railroad companies “may lawfully insist upon being carried from station to station before being ejected, it is not apparent why they would not thereby be enabled, by re-embarking upon subsequent trains, to ride the whole length of a road and all the time without payment of fare. The theory is utterly untenable; and indeed we understand that it was disclaimed in argument by counsel for the appellant, although he cited authority for the position. The claim, however, is virtually made in the appellant’s brief, where it is said that “ he (the conductor) should have carried him (the appellant) to Bennings, the first regular station, a mile or two further on, and the whole trouble would have been avoided.” There is no such obligation upon a common carrier; and we do not deem it *351 necessary to discuss this subject further. McClure v. R. R. Co., 34 Md., 532.
Neither do we find any provision of the law that requires a railroad company to provide shelter for a trespasser whom it is compelled to eject from its train, or to see that he incurs no risk from the inclemency of the weather or the fury of the elements. It owes no duty whatever to such trespasser, other than the duty enjoined by our common humanity to abstain from unnecessary violence and to forego the exercise of its right under circumstances that savor of harshness and cruelty. It may not eject him with undue violence. It may not eject him at an unsafe or dangerous place — upon a trestle-work, for example, or in a marsh, or in a desert, or upon a bank of snow. Then again, when such a trespasser is a person more or less incapable of taking care of himself — - a child, a lunatic, an imbecile, a person under the influence of intoxicating liquor — considerations of humanity will demand that he receive different treatment from that awarded to the ordinary adult man in the full possession of all his faculties, as was the plaintiff in this case. With due regard to these humane requirements, the railroad company was justified in ejecting the appellant from its train at any point upon the route; and it was his own fault exclusively if misfortune followed.
No reasonable man can doubt that the platform upon which the appellant was put off the train, whether it was a regular station or not, or whether it was for the use of passengers or merely for that of employees, was a safe place; and that, if the plaintiff had remained there until the storm passed, he would have been saved his severe experience on the bridge, and probably all the consequences of his exposure- — and that, too, whether there was a place of shelter there or not. That there was a place of shelter in which he might have taken refuge is very evident. But this we regard as wholly unimportant. All that he was entitled to have was to be put off at a safe place; and the place at which he was ejected was undoubtedly a safe place, upon his own *352 testimony, even in the face of an impending storm. It is not unusual for men to be out in storms; and it would certainly be extraordinary to require that a railroad company should not exercise its undisputed right of ejectment because there was a possibility that the person ejected might be caught in a storm.
The case of Malone v. R. R. Co., 152 Pa. St., 393, is cited to the contrary. But there the court, in its opinion, distinctly states that the plaintiff had been improperly and unlawfully ejected from the train; and it was a case of a woman put off at an unusual place, caught in a storm without shelter, dazed and confused at the novelty of the situation and the unusual circumstances. It was a case both of unlawful expulsion from the train and of expulsion under circumstances that constituted inhumanity. We find no evidence of any such circumstances in the present case, and we are satisfied that there was nothing whatever in the case that would justify its submission to a jury. We regard as entirely appropriate to it the language of the Supreme Court of the United States, by Mr. Justice Brewer, in the recent case of Elliott v. R. R. Co., 150 U. S., 245 :
“ It is true that questions of negligence and contributory negligence are ordinarily questions of fact to be passed upon by a jury; yet when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw the case from the consideration of the jury and direct a verdict.”
Entertaining these views, we are of opinion that the judgment of the court below should be affirmed, with costs ; and it is so ordered.