ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* WOLF.

Opinion delivered July 3, 1911.

INTERSTATE COMMERCE—EFFECT OF MISTAKE AS TO RATE.—Where a railway agent by mistake inserted in a bill of lading for an interstate shipment a rate less than the published rate, the railroad company is not bound thereby; and it is immaterial in such case that the shipper and the agent were both ignorant of the published rate.

Appeal from Baxter Circuit Court; *John W. Meek,* Judge; reversed.

*W. E. Hemingway, E. B. Kinsworthy, Horton & South* and *James H. Stevenson,* for appellant.

A railway company is not bound by a misquotation of interstate rates occurring through mistake of its agent. The

general rule, based on grounds of public policy and to prevent the possibility of collusive misquotations and mistakes in rate quotations from resulting in evasions of the tariffs filed with the Interstate Commerce Commission, is that a misquotation of rates by an agent of the company does not entitle the shipper to the erroneous rate, but he must pay the rate called for by the tariff regularly on file. Barnes, Interstate Trans. § 446A; 1 Drinker, Interstate Comm. Act, § 244. This same principle has been recognized by this court. See 71 Ark. 552, 555. See also 158 U. S. 98; 76 Ark. 82; 202 U. S. 242, 244-5. This principle controls whether the erroneous rate is fixed in a bill · of lading, or rests only in parol or the verbal agreement of the agent. 12 I. C. C. Rep. 469; 14 *Id.* 232, 236. It is immaterial that the contract for the lower rate than the tariff calls for was entered into by mistake, or that the shipper was ignorant of what the published rate really was. 43 S. W. 609; 54 Kan. 232; 38 Pac. 266; 102 U. S. 242; 119 Ala. 539.

*Allyn Smith,* for appellee.

Had appellant furnished a car of 40,000 pounds capacity, the rate quoted would have been correct. Since appellee had no control over the selection of the car of 80,000 capacity, appellant's contention that he should be held for the excess capacity is hardly tenable. Appellant's contention that appellee cannot recover is also contrary to a statute of this State making it unlawful for a railway company to charge and collect or attempt to charge and collect a greater sum for transporting goods "than is specified in the bill of lading." Kirby's Dig., § 6664.

WOOD, J. This is a suit by appellee against appellant, instituted in a justice of the peace court to recover $42, alleged to be due appellee from appellant on account of wood shipped over appellant's railway and by it converted to its own use. The complaint alleged, among other things, that appellee delivered to appellant for shipment from Crickett, Ark., to Aurora, Mo., 12 cords of wood in car P. M. 51,099 at an agreed price of four and one-half cents per hundredweight; that the wood weighed forty thousand, and was billed out at that weight, making the agreed freight $18; that the value of the wood at Aurora was $2.50 per cord; that appellant, instead of delivering

the wood to appellee at Aurora, converted same to its own use and benefit. Therefore, appellee prayed for judgment in the sum of $44.50, with interest and costs.

The answer denied the allegations of the complaint, and denied any liability to the plaintiff. The case was tried in the circuit court upon an agreed statement of facts, as follows:

It was agreed in open court that the plaintiff, J. W. Wolf, on December 18, 1909, shipped a car of cordwood from Crickett, Ark., consigned to himself at Aurora, Mo.; that the agent at Crickett gave him a minimum weight of forty thousand pounds on said car, and issued him a bill of lading for said car of wood. The bill of lading was made a part of the agreed statement of facts, and was read to the jury. It is in the ordinary form of a non-negotiable bill of lading, reading from Crickett, Ark., to Aurora, Mo., and consigned by J. W. Wolf to himself, for "12 cords wood," "weight (subject to correction) 40,000."

It was further agreed that the freight on said car of wood was to be $18, according to said bill of lading, but that when said car of wood reached Aurora the agent at that place refused to accept the $18 as freight, and to allow plaintiff to pay the same and unload said car, but demanded instead $36 as the amount of the freight; that the agent declined to so settle with the plaintiff, upon the ground that the marked capacity of said car was 80,000 pounds, and that by the tariff A-791 of the Interstate Commerce Commission—this being an interstate shipment—he was not allowed by law to collect the freight on said car for less than its "marked capacity"; that the consignee refused to accept said car, and pay said $36 freight demanded, and that said car remained at Aurora 17 days, and was sold by said agent at said place for $62.50, which, after deducting $17 for seventeen days' demurrage and $36 for the freight, left $9.50 in the hands of the defendant due the plaintiff, which the defendant offered to pay the plaintiff, and he refused, demanding the value of the wood, $62.50, less $18 freight, as per the terms of the way bill.

It was further agreed that the paper folder attached to the agreement is I. C. C. Tariff No. A-791 referred to, and that same should be considered as evidence in the case. (Said tariff is a regularly printed and authorized Interstate Commerce Commission tariff covering cord wood, etc., between stations

on the Missouri Pacific Railway and St. Louis, Iron Mountain & Southern Railway, "in Arkansas * * * Missouri * * etc." Item 17 of the third sheet applying between Crickett, Ark., and Aurora, Mo., on "cord wood, car loads, minimum weight marked capacity of car * * * 4½ cents per hundred-weight.")

And it was further agreed that certain letters of G. M. Kirby, the agent at Aurora, Mo., addressed to J. S. Tustin, general freight claim agent for the defendant, and bearing dates respectively January 2, 1910, January 13, 1910, be read in evidence. The first of these letters was a letter from the agent at Aurora to the general freight claim agent, advising him that the consignee had refused the shipment for the reason that he contended that he was to pay freight only on 40,000 pounds, whereas the local agent had been instructed by the commercial agent of the company that he could not accept freight on forty thousand pounds, but that he must only receive freight for the market capacity. The local agent asked authority to dispose of the shipment.

The other letter is a letter also from the agent at Aurora, showing that the company had sold the shipment to Bert Gardner of Aurora, Mo., for $62.50, being $2.50 higher than any other bid, and that the amount realized, after deducting freight, $36, and 17 days' demurrage, $17, total $53, left a balance of $9.50, which was remitted.

It was further agreed between the parties that at the time said car was shipped from Crickett the agent at said station undertook to bill out the same from memory as to the tariff on said shipment, and through mistake made the plaintiff a rate on the 40,000 pound minimum, instead of the 80,000 pound maximum (80,000 pounds being the marked capacity of the car); that he was expecting to receive and unload said wood at Aurora, on a basis of 40,000 pounds, minimum, $18 freight; and, when he was denied the privilege of so doing, he declined to receive the freight on any other terms, and the same was sold by the agent as above set forth.

The court found the facts as agreed to by the parties. The appellant moved the court to declare the law arising thereon to be in its favor, which motion the court refused, and appellant duly saved its exceptions. The court rendered judgment for

appellee in the sum of $44.50, and this appeal has been duly prosecuted.

The only question in the case is whether or not a railway company is bound by the mistake of its agent in misquoting and fixing freight rates on an interstate shipment of freight.

Mr. Barnes in his recent work on Interstate Transportation said: "Under the present law, regardless of the rate quoted, the published tariff rate must be paid by the shipper and actually collected by the carrier. It is unfortunate that shippers should be misled to their injury by erroneous information furnished by representatives of carriers as to the rate in effect. It is, of course, the duty of the carrier's agent to furnish correct information as to the proper application of the lawfully established rates. However, the law requires that tariffs shall be open to public inspection, and therefore shippers are themselves charged with notice of the rate lawfully applicable."

The reason for the rule, he says, is that otherwise "collusion between the carrier and a shipper, which it desired to favor, for protection for other than tariff rates would be rendered too easy of accomplishment." For, continuing, he says: "In such a case the carrier could protect any rate which it might desire to apply by simply quoting it to the favored shipper, and thus the integrity of the published tariff (a strict observance of which is required by law in order to prevent unjust discrimination) would be constantly violated." Barnes, Interstate Transportation, § 446. See 1 Drinker, Interstate Commerce Act, § 242.

The principle upon which this rule rests is recognized by this court in *Myar* v. *St. Louis, I. M. & S. Ry. Co.*, 71 Ark. 552, where we had under consideration the question as to whether a station agent had power, by misquotation of an interstate rate, to bind the company. In that case we said: "Appellee's agent at Waldo had no authority to make such a contract as appellant alleges he made. He could not lawfully discriminate in favor of one shipper by charging him for transportation a lower rate than was allowed to others; and such did not come within the apparent scope of his authority."

In *Spratlin* v. *St. Louis, I. M. & S. Ry. Co.*, 76 Ark. 82, this court held that a statute making it unlawful to charge or

collect a greater sum for transporting 'freight than specified in the bill of lading was void as to interstate shipments, because in conflict with the Interstate Commerce Act of February 4, 1887, chap. 104, § 6, as amended by the act of March 6, 1899, chap. 382. In so holding we but followed the decision of the Supreme Court of the United States in *Gulf, C. & S. F. Ry. Co.* v. *Hefley*, 158 U. S. 98, and *Texas & P. Ry. Co.* v. *Mugg*, 202 U. S. 242. In the latter case the Supreme Court of the United States, speaking through its present Chief Justice, as to the effect of the decision in *Gulf, C. & S. F. Ry. Co.* v. *Hefley* above, quoted from the decision of the Supreme Court of Alabama in *Southern Ry. Co.* v. *Harrison*, 119 Ala. 539, in part as follows:

"The clear effect of the decision was to declare that one who has obtained from a common carrier transportation of goods from one State to another at a rate, specified in the bill of lading, less than the published rates filed with and approved by the Interstate Commerce Commission, and in force at the time, whether or not he knew that the rate obtained was less than the schedule rate, is not entitled to recover the goods, or damages for their detention, upon the tender of payment of the amount of charges named in the bill of lading, or of any sum less than the schedule charges; in other words, that, whatever may be the rate agreed upon, the carrier's lien on the goods is, by force of the act of Congress, for the amount fixed by the published schedule of rates and charges, and this lien can be discharged, and the consignee can become entitled to the goods, only by the payment, or tender of payment, of such amount. Such is now the supreme law, and by it this and the courts of all other States are bound."

The same principle is applicable, whether the erroneous rate is fixed in the bill of lading or whether it was by parol agreement on an erroneous quotation of the rates made by the company's agent at the point of shipment. *Poor* v. *Chicago, B. & S. Ry. Co.*, 12 I. C. C. Rep. 469; *Forster Bros. Co.* v. *Duluth S. S. & A. Ry. Co.*, 14 I. C. C. Rep. 232-236.

It is also immaterial as to whether the shipper was ignorant of what the published rate really was, as shown by *Texas & P. Ry. Co.* v. *Mugg, supra*, and *Southern Ry. Co.* v. *Harrison, supra.* That the shipper and the agent making the shipment were ignorant of the published rate, or made a mistake as to such

rate, could make no difference. The shipper, under the authorities, must pay according to the published rate as fixed by the Interstate Commerce Commission, for the reasons above indicated.

It was shown that the published tariff of the Interstate Commerce Commission under which the shipment was made provides that the prescribed rates shall be assessed on the basis of "marked capacity of car." The marked capacity of the car in which the present shipment was made was 80,000 pounds. The agent made a mistake in telling the shipper that the freight would be assessed on the minimum weight of 40,000 pounds, instead of the marked capacity. But we think it clear that, under the authorities above cited, the company cannot be held liable as for conversion on account of such mistake. The court therefore erred in not declaring the law on this point in favor of appellant as requested; and for this error the judgment is reversed, and the cause remanded with dir ctions to enter a judgment in favor of appellee for the sum of $9.50, he paying the costs of this appeal.