## 9080

### SAUNDERS v. ATLANTIC COAST LINE R. R. CO.

#### (85 S. E. 167.)

CARRIER AND PASSENGERS.    INTERSTATE TRANSPORTATION TICKETS.    FARES. DAMAGES.    PROXIMATE CAUSE.

1. CARRIER AND PASSENGERS—TICKETS.—A carrier is liable to a passenger for damages arising from the negligent act or omission of its ticket agent in furnishing a ticket over a route different from that applied for; where such act was independent of the regulations under the acts of Congress with reference to interstate commerce.

2. CARRIERS AND PASSENGERS—INTERSTATE TRANSPORTATION.—No liability of a carrier can be predicated upon the misrepresentations or mistakes of its agents as to the rates applicable, or previleges or facilities to be afforded under the tariffs filed with the Commission of Interstate Commerce.

3. DAMAGES—PROXIMATE CAUSE.—Damages sustained by a passenger in consequence of his ejection from a train, while heedlessly attempting to ride upon a ticket, after he should have known that the carrier's agents could not lawfully accept it for transportation over that particular route, are not the proximate result of the act or omission of the carrier's ticket agent in furnishing a ticket over a different route from that applied for.

4. CARRIERS AND PASSENGERS—TICKETS.—It is the duty of a passenger to heed the reasonable explanations and warnings given by the carrier's agents as to route over which a ticket may lawfully be used.

5. CARRIERS AND PASSENGERS—CONTRACTS.—A carrier is not liable for failure to allow a passenger travelling upon a ticket privileges which would be in violation of law, although it may be liable in damages for the wrongful act of its agent in furnishing such ticket.

6. CARRIER AND PASSENGERS—EXCESS FARES.—Where a passenger after notice, and opportunity to procure a proper ticket, fails to so do, and tenders on train the price of such ticket, or mileage coupons exchangeable at stations for such ticket, his ejection for failure to pay the cash fare required on trains, is lawful.

Before SEASE, J., Sumter, November, 1913.    Reversed.

Action by M. B. Saunders against Atlantic Coast Line Railroad Company. From judgment for plaintiff, defendant appeals. The facts are stated in the opinion of the Court.

*Mr. Lucian W. McLemore,* for appellant, cites: *As to refusal of motion to direct verdict:* Mann-Elkins Act of Congress, June 18, 1910, secs. 2, 6. *Action for damages arising out of misinformation by agent cannot be maintained:* 119 Ala. 539; 43 L. R. A. 385; 72 Am. St. Rep. 936; 24 So. 552; 158 U. S. 98; 202 U. S. 242; 204 U. S. 439; 219 U. S. 467; 34 L. R. A. (N. S.) 671; 56 L. Ed. U. S. 556; *Ib.* 568; 225 U. S. 155. *Damages claimed are speculative:* 65 S. C. 490. *Charge on facts:* 88 S. C. 421; 91 S. C. 216; 87 S. C. 184. *Distinguished:* 71 S. C. 446.; 78 S. C. 103; 69 S. C. 434.

*Messrs. L. D. Jennings* and *R. D. Epps,* for respondent.

April 24, 1915.

The opinion of the Court was delivered by Mr. Justice Hydrick.

According to plaintiff's testimony, the facts appear to be as follows: On June 5, 1913, plaintiff was at Fayetteville, N. C., and wanted to meet a business engagement at Barnwell, S. C., in the afternoon or evening of that day, and go thence to Atlanta, Ga., in time to meet his wife, who was to arrive there in the early morning of the next day, on a train from Greenwood, S. C., where she resided with plaintiff. His wife was sick and was going to Atlanta for medical treatment, and he was anxious to get there in time to meet her and take her to the sanatorium.

Plaintiff went to defendant's ticket agent at Fayetteville and told him only of his engagement at Barnwell, and asked if he could get a ticket on which he could get to Barnwell in time to meet it. After some investigation, the agent told

him that he could sell him such a ticket, and that his route would be via Florence and Sumter to Columbia, S. C., over defendant's lines, and from Columbia to Barnwell over the Southern Railway. Plaintiff had an interstate mileage book which was good over all the roads in this route, and, in exchange for mileage coupons therefrom, the agent gave him a passage ticket from Fayetteville to Barnwell, and told him that, according to the schedules, he should get to Columbia about noon, and to Barnwell about 4:30 p. m. that day.

The agent could have given him a ticket which would have entitled him to transportation over the route indicated, and, according to the schedules, he could have arrived at Barnwell about the time stated. But the ticket given him indicated no special route, and, therefore, it entitled him to transportation only over defendant's lines by the direct route from Fayetteville to Barnwell, over which it was impossible for him to get to Barnwell that day, because defendant's local train for Barnwell left Sumter before the arrival of the train from Fayetteville.

The distance from Fayetteville to Barnwell over the direct route is 201 miles, while the distance by Columbia is 226 miles. The defendant's agent at Fayetteville testified that he detached only 201 mileage coupons from plaintiff's book, and denied that plaintiff asked him for a ticket via Columbia, or said anything to him about his engagement or desire to get to Barnwell that day—that he merely asked for a ticket to Barnwell, which he gave him over the direct route.

The conductor on the train between Fayetteville and Florence, to whom plaintiff first presented the ticket, told him that his ticket was not good over the route via Columbia, and that he could not get to Barnwell on it that day.

On arriving at Florence, plaintiff had to change cars, and, while waiting for the train for Sumter, he went to Mr. Hare, defendant's assistant superintendent, and explained the situation to him, telling him that he intended to hold defendant to the contract which he said he had made with

the agent at Fayetteville.    Mr. Hare called up the Fayette-
ville office over the telephone, and asked why the ticket
had been irregularly sold.    It seems, however, that the agent
who sold the ticket was not then on duty, and, as plaintiff's
time was limited, Mr. Hare advised him to go ahead on the
ticket as far as Sumter, as it entitled him to passage to that
place, and said that he would wire him further instructions
on the train.

The conductor on the train between Florence and Sum-
ter, to whom the ticket was next presented, told plaintiff
that it was not good via Columbia, and advised him to get
off at Sumter and buy a ticket to Columbia.    Plaintiff
informed him of his anxiety to get to Barnwell that day and
thence to Atlanta, and his reasons therefor.    The conductor
replied that he was as sorry as he could be, but that he could
not honor the ticket further than Sumter. · He afterwards
showed plaintiff a telegram from Mr. Hare, which read as
follows: "Cond. No. 51: Please say, to Mr. M. B. Saunders,
holding mileage exchange ticket Fayetteville to Barnwell,
that the agent at Fayetteville advises he only pulled two
hundred and one miles from book which is local mileage
all A. C. L. route via Florence and Sumter.    Suggest to him
that if he desires to go via Columbia on Southern that he
purchase ticket via that route and handle the one he has.
Wire (with ?) Mr. T. C. White at Wilmington for refund
for unused portion."    The word "wire" in the last sentence
of the telegram is evidently a misprint in the record or in
the telegram 'for "with."    At any rate, plaintiff testified
that Mr. Hare advised him in the telegram to pay the cash
fare or buy a ticket from Sumter to Columbia, and that the
unused portion of his ticket would be refunded.    At first
plaintiff seems to have been inclined to do this, but after-
wards decided to stand on his contract, as he expressed it,
and insist on being carried via Columbia on the ticket which
had been given him.

After leaving Sumter, the conductor approached plaintiff and asked him if he had gotten a ticket, and, on being told that he had not, and that he would insist on being carried on the ticket he had, the conductor told him that, unless he paid his fare in cash, he would eject him.   Plaintiff then offered to pay $1.05, which is the price of a ticket from Sumter to Columbia, when bought at the Sumter office; but by a valid rule of the company, conductors are required to collect $1.20 of passengers who fail to get tickets.   Plaintiff refused to pay the extra charge, but offered to pay his fare with coupons from his mileage book, which the conductor refused to accept, and, thereupon, plaintiff was ejected at Wedgefield.   There was nothing in the manner of his ejection of which complaint is made, and he can recover, if at all, solely upon the conduct of the defendant's agent at Fayetteville, for the testimony shows that the other agents of defendant treated him with the utmost courtesy and consideraion, and accorded to him every right to which he was entitled under the law.

Besides a general denial, defendant set up in its answer the defenses that, under its tariff, filed with and approved by the interstate commerce commission, and duly published, plaintiff was not entitled to be carried to Barnwell, via Columbia, on the ticket which had been given him, and that, in attempting to ride on it, after he had been repeatedly warned that it was not good and would not be accepted for his transportation over that route, he was guilty of contributory negligence, and suffered no injury as the proximate result of any wrongful act of defendant; and, on those grounds, besides others which related to the matter of damages, moved the direction of a verdict.   The motion was refused, and the jury found for plaintiff $500.00 punitive damages.   From judgment on the verdict, defendant appealed.

There was no error in refusing the motion to direct the verdict on the first ground above stated.   The issues aris-

ing out of the interstate feature of the transaction and the law applicable thereto were not alone necessarily conclusive of plaintiff's rights. It is true that, under defendant's tariff filed with the interstate commerce commission, approved by it, and published, as alleged and proved at the trial, plaintiff was not entitled to transportation on his ticket over the route via Columbia, and defendant could not have accepted the ticket for his transportation over that route without violating the act of Congress, and no liability can be predicated upon its refusal to violate that act. The ticket did not indicate any particular route, and, therefore, on its face, it entitled plaintiff to transportation over defendant's lines only for the direct route. If defendant had acceded to plaintiff's demands, and carried him on that ticket via Columbia, it would have accorded to him a privilege and advantage which it did not allow to all other interstate passengers holding similar tickets. The act of Congress prohibits such discriminations, and no contract granting them, directly or indirectly, can be lawfully made or enforced in the Courts. Nor can liability be predicated upon the failure to perform them when made.

It is well settled, too, that under the act of Congress and decisions of the Supreme Court of the United States, construing it, no liability of a carrier can be predicated upon the misrepresentations or mistakes of its agents as to the rates applicable, or privileges or facilities to be afforded under the tariffs filed .with the commission. Passengers and shippers are conclusively presumed to know them, as well as the agents of the carriers. This question has been so recently and frequently considered and decided both by the Supreme Court of the United States and by this Court that it is not deemed necessary to state the reasons therefor, or even to cite the decisions.

But it does not follow that a carrier may, under no circumstances, incur liability for the negligent act or omis-

sion of his agent affecting the interstate transportation of passengers or freight, when it does not relate to or affect the applicable rate or the privileges or facilities to be afforded under the published tariff, or any of those matters which have been regulated by the act of Congress upon that subject. To illustrate, the Southern Railway Company operates two lines from Columbia, S. C., to Charlotte, N. C. Now, if a passenger should desire to go from Columbia to Charlotte via Spartanburg, and should ask and pay for a ticket over that route, and the agent should negligently give him a ticket good only over the direct route from Columbia to Charlotte, and the passenger should suffer damages, as the proximate result of that negligence, the company would be liable; because, although it would be an interstate journey, the negligence of the agent would in nowise relate to or affect the applicable rate or the privileges or facilities to be afforded the passengers, under the tariff filed and published, but solely to the kind of ticket given him. So here, if plaintiff had not been warned that his ticket was not good over the route via Columbia, the defendant would have been liable for damages sustained by him, if any, by reason of his ejection, assuming, but not deciding, of course, that the agent at Fayetteville negligently or wilfully gave him the wrong kind of ticket, for the transaction did not involve any contract or attempt to contract relative to rates or privileges or facilities not afforded to all passengers, in similar circumstances, but solely the kind of ticket given him. In *McKeown* v. *Ry.*, 98 S. C. 338, 82 S. E. 437, the carrier was held to be liable in damages to an interstate passenger for his ejection from a train growing out of the misrepresentation of the ticket agent that the ticket sold was good on that train.

But plaintiff cannot recover for any damages sustained by reason of his ejection, because such damages, if any, were not the proximate result of the act or omission of defend-

ant's agent at Fayetteville, but of his own heedless conduct in attempting to ride upon the ticket, after he had been told, and should have known, that defendant's agents could not lawful accept it ' for his transportation over the route which he took. If he had had the right to ride over that route on that ticket, his ejection would have been unlawful, and his recovery would have been sustained, notwithstanding his refusal to pay cash fare. *McKeown* v. *Ry., supra.* But as he had no such right, under the circumstances, it was his duty to buy a ticket or pay the cash fare. *Carter* v. *Ry.,* 75 S. C. 355, 55 S. E. 771; *Hunter* v. *Ry.,* 90 S. C. 507, 73 S. E. 1017.

In *Smith* v. *Ry.,* 88 S. C. 421, 70 S. E. 1057, 34 L. R. A. (N. S.) 708, this Court said that it is the duty of a railway conductor to heed the reasonable explanation of a passenger relative to his ticket and his right to ride thereon. The duty is no less incumbent upon the passenger to heed the reasonable explanation and warning of the conductor, or other agent of the carrier, in the premises. Both should be reasonable and approach each other and the subject of difference in the mutual spirit of accommodation. *Teddars* v. *Ry.,* 97 S. C. 153, 81 S. E. 474. The rule announced in the Smith case cannot be carried to the extent of requiring a conductor to carry out an agreement made by a ticket agent, or to allow a passenger to ride upon a ticket furnished him, which would be in violation of law, notwithstanding the company may be liable in damages for the wrongful act or omission of the agent in furnishing such ticket.

It only remains to consider the contention of respondent that his ejection was unlawful, because the conductor refused to accept $1.05 as the cash fare, and also because he refused to accept coupons from his mileage book. Neither contention can be sustained. The charge of $1.20 was within the rates prescribed by law, and it was competent for the company to make the rule requir-

ing passengers without tickets to pay that amount. It was the duty of the conductor to enforce it. The mileage contract held by plaintiff expressly provides that coupons therefrom will not be accepted on trains, except in certain contingencies, of the existence of which there was no proof in this case.

Judgment reversed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE GAGE concur in the opinion of the Court.

MR. JUSTICE WATTS, *dissenting.* I do not agree in the opinion of Mr. Justice Hydrick. The plaintiff was an interstate passenger, and the mileage taken from him from Fayetteville, N. C., to Barnwell S. C., was 201 miles. The distance from Fayetteville, N. C., to Columbia, S. C., was less than 201 miles, and if the agent of the defendant made a mistake in routing him he certainly would have the right to ride over defendant's road the number of miles he had paid for, which would have carried him to Columbia. In addition to this the evidence shows that the defendant attempted to exact from him between Sumter and Columbia not only the fare provided for, but an excess fare fixed not by the interstate commission, but by the railroad commission of the State of South Carolina. This was without authority of law and was an unlawful invasion of plaintiff's rights, as under no circumstances should he have been required to pay more than the rates fixed by the interstate commerce commission. He could not be both an intrastate and interstate passenger at the same time, and be treated as a wrongdoer because he failed to comply with the rules and regulations of the railroad commission of South Carolina.

I think the exceptions should be overruled and judgment affirmed.

MR. JUSTICE FRASER concurs in the dissenting opinion.