GORDON v. KANSAS CITY SOUTHERN RAILWAY COMPANY.

Opinion delivered February 13, 1928.

CARRIERS—TIME FOR USE OF LIMITED TICKET.—As between a provision of a railroad ticket covering an interstate trip that it will not be accepted if presented after a certain day, and the provision of the tariff sheet, approved by the Interstate Commerce Commission, that the return trip must be completed before midnight of such day, the limitation in the tariff sheet governs.

Appeal from Polk Circuit Court; *B. E. Isbell*, Judge; affirmed.

*Pole McPhetrige*, for appellant.

*James B. McDonough*, for appellee.

SMITH, J. On December 22, 1926, appellant purchased a full-fare round-trip ticket for herself and a half-fare round-trip ticket for her granddaughter at Mena, Arkansas, from that station to Kansas City, Missouri, and return. The usual one-way full fare was $13.66, and the round-trip full fare was $27.32. The tickets purchased by appellant were excursion tickets, and the price paid for her own ticket was $20.49, a reduction from the full regular fare of $6.83. Stamped on both tickets was this condition:

"In consideration of the reduced rate at which this ticket is sold, it will not be accepted for passage if presented after 1-6-1927."

At the time these tickets were sold there had been filed with and approved by the Interstate Commerce Commission tariff sheets regulating Christmas excursion tickets, and a copy of these tariff sheets was on file in the office of the ticket agent who sold the tickets. These tariff sheets contained the following limitation upon the sale of these excursion tickets: "Dates of sale—December 21 to 25, inclusive, 1926. Final return limit—January 6, 1927. Transit limit—Going—Tickets must be used from selling station on date of sale, as stamped or perforated on ticket. Return trip—Return trip must be completed to original starting point before midnight of date of final limit."

Appellant went to Kansas City, where she visited her nephew and niece, and remained until January 6, 1927, at which time she presented her ticket and that of her granddaughter to the gateman at the Union Station for admission as passengers to a train of appellee railway company which was due to leave Kansas City at 11:35 p.m. Admission to the train was denied appellant upon the ground that the tickets would expire in twenty-five minutes after the departure of the train, and the journey which appellant proposed to make could not be completed within that time; indeed, the train was not due to arrive at Mena, appellant's destination, until the following afternoon. There was no station at which the train would have stopped in twenty-five minutes, and appellant does not contend that she desired to use the tickets for that period of time. Her contention is that she presented the ticket before its expiration, and that she was therefore entitled to be transported as a passenger on the ticket.

When appellant was denied the right to enter the train and become a passenger, she borrowed from her nephew, who had escorted her to the station, money to pay her fare and that of her granddaughter to her destination. After paying the full regular fare of herself and her granddaughter, she surrendered the return portions of her excursion tickets to the train auditor, and later received from the railway company $10.60 as rebate.

Appellant sued for damages for a breach of the contract of carriage, and offered testimony to the effect that, as a result of the humiliation and chagrin endured by her when her ticket was refused, she suffered a nervous breakdown. Suit was not brought on account of the grandchild. At the conclusion of the testimony the court directed the jury to return a verdict for the defendant railway company, which was done, and from the judgment pronounced thereon is this appeal.

The question presented by this appeal is whether the stipulation above quoted appearing on the ticket or the limitation as to the period of its validity appearing in

the tariff sheets shall govern. As the ticket covered an interstate trip, the tariff approved by the Interstate Commerce Commission must govern. *L. & N. Ry. Co.* v. *Motley,* 219 U. S. 467, 31 S. Ct. 265, 55 L. ed. 297, 34 L. R. A. (N. S.) 671.

The tariff sheet required the completion of the trip to be accomplished not later than January 6, and, as has been shown, it would hardly have been begun by that time, and appellant asked nothing less than that she be carried to her destination, which she could not have reached until the following afternoon.

In 10 C. J., chapter Carriers, § 1080, page 662, it is said:

"Under the Interstate Commerce Act a carrier must publish passenger rates, and cannot charge a less or a different rate than that specified in its published rates, unless such rate is found to be unreasonable by the Interstate Commerce Commission, and neither the misquotation of rates nor ignorance is an excuse for charging or paying less or more than the filed rates, since passengers, as well as the agents of the carrier, are presumed to know such rates."

In the case of *Sanders* v. *Atlantic Coast Line R. Co.,* 85 S. E. 167, 101 S. C. 11, the Supreme Court of South Carolina said:

"It is well settled, too, that, under the act of Congress and the decisions of the Supreme Court of the United States construing it, no liability of a carrier can be predicated upon the misrepresentations or mistakes of its agents as to the rates applicable, or privileges or facilities to be afforded under the tariffs filed with the Commission. Passengers and shippers are conclusively presumed to know them, as well as the agents of the carriers. This question has been so recently and frequently considered and decided both by the Supreme Court of the United States and by this court that it is not deemed necessary to state the reasons therefor, or even to cite the decisions."

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Wolf,* 100 Ark. 22, 139 S. W. 536, Ann. Cas. 1913C, 1384, it was held (to quote the syllabus): "Interstate commerce— Effect of mistake as to rate.—Where a railway agent, by mistake, inserted in a bill of lading for an interstate shipment a rate less than the published rate, the railroad company is not bound thereby; and it is immaterial in such case that the shipper and the agent were both ignorant of the published rate."

In that case this court quoted from Barnes on Interstate Transportation, § 446, as follows: "Under the present law, regardless of the rate quoted, the published tariff rate must be paid by the shipper and actually collected by the carrier." The reason given by the author for this apparently harsh rule is that the integrity of the published tariff must be preserved to prevent discrimination, and that, if it were otherwise, the published tariffs, through collusion or carelessness, would be constantly violated.

See also *Pennington* v. *Illinois C. Ry. Co.*, 252 Ill. 584, 97 N. E. 289, 37 L. R. A. (N. S.) 983; *Samples* v. *Georgia & F. Ry. Co.*, 143 Ga. 805, 85 S. E. 1002; *Sherman* v. *Chicago, etc., Ry. Co.*, 40 Iowa 45.

It follows therefore that the limitation in the tariff sheet must govern, and not that stamped upon the ticket, and, as appellant did not use the ticket within the time limited by the tariff sheet, the railway company had the right to refuse to accept it and to collect the fare, as was done, and the judgment of the court directing a verdict in favor of the railway company must therefore be affirmed, and it is so ordered.