PHILLIPS *v.* THE GEORGIA RAILROAD & BANKING COMPANY.

According to the code, §2068, a common carrier cannot limit his legal liability by any notice or entry on tickets sold. Without making an express contract with the passenger, a railroad company cannot, after selling a return ticket and receiving pay therefor, exact of the passenger as a condition of returning on the ticket that he shall sign it and that the signature shall be attested by a given agent who shall stamp it. This is true although the ticket deliv-

ered to the passenger be sold at a reduced price and limited as to time and may indicate on its face that it is to be signed, attested and stamped, and that it cannot be used unless these requisites be complied with.

November 27, 1893.

Action for damages.   Before Judge EVE.   City court of Richmond county.   May term, 1893.

Mrs. Phillips sued the railroad company for a wrongful ejection from one of its trains on which she was a passenger.   A nonsuit was granted, and she excepted. The evidence made the following case: On June 14th or 15th, 1890, her husband applied to the defendant's ticket-agent in Atlanta for round-trip tickets for himself and wife to Augusta at the reduced rate of $5.13 each.   He knew, from the advertisements which he had seen about the tickets being on sale, of a limitation of them; but had no notice from any of the company's officers that the tickets were to be signed by him or his wife.   The agent said nothing to him when he bought the tickets, did not ask him to sign them, and gave him no warning or instruction in reference to them; and neither he nor his wife signed them.   They went from Atlanta to Augusta on the tickets, which were taken up by the conductor, who tore off the coupons and handed the tickets back.   Within the time specified in the tickets they started back from Augusta to Atlanta; they had their trunks checked from Augusta to Atlanta on the tickets, and the baggage-master said nothing to them about having the tickets signed.   The ticket was as follows: "Issued by the Georgia Railroad Co.   Good for one continuous first class passage to Augusta, Georgia, and return, when stamped as indicated on back hereof and presented with checks attached, and signed by the purchaser in accordance with the following contract: In consideration of the reduced rate at which this ticket is sold, it is hereby understood and agreed between myself

and the Georgia R. R. Co., that this ticket is positively not transferable, and will not be honored for passage if presented by any other than myself, whose signature is subscribed below. . . . I further agree that on (or one day before) the day of my departure west, I will identify myself as the original purchaser of this ticket by writing my signature on the back of this contract (and by other means, if necessary) in the presence of the ticket agent of the Georgia R. R. at Augusta, Georgia, who will witness the same. . . . And I further agree to sign my name as a means of identifying myself as the original purchaser of this ticket, whenever called upon to do so by any of the conductors or agents of the line over which this ticket reads. I fully understand the terms upon which this ticket is issued, and hereby accept the same, and agree that this ticket shall be void unless I comply with the conditions specified above." Then followed blank spaces for the signatures of the purchaser and of the agent, and for the date of sale. Annexed were three coupons; the first reading thus: "Issued by the Georgia Railroad Co. One first class passage Augusta to station stamped on back of this coupon, on condition named in contract. This check is not good if detached. Augusta, Ga., and return." The The second coupon was: "To purchaser: Read the above contract, and take notice that the return part of this ticket must be stamped and your signature witnessed by the ticket-agent of the Georgia Railroad, at Augusta, Georgia, before it will be honored for passage." The third coupon was: "Issued by Georgia Railroad Co. One first class passage from station stamped on back of this coupon to Augusta, on condition named in contract. This check is not good if detached. Augusta, Ga., and return." On the back of the tickets were printed directions to the company's agent to stamp in certain indicated places, and the following: "In compli-

-ance with my contract with the Georgia Railroad ·Co., I hereby subscribe my name as the original purchaser ·of this ticket." This was followed by blank spaces for the purchaser's signature, and for the signature of the ·agent as witness.

On the return trip, when the train was about four miles out of Augusta, the conductor came for the tickets, and on their being presented to him, he said they were not good because they had not been signed at either end of the road. Phillips testified, that he did not know ·at the time he was required to sign it, and did not know the name of the agent at Augusta, and that neither he nor the plaintiff had any knowledge of the contents of ·the ticket before this. The conductor stopped the train ·and told the plaintiff and her husband that they would have to pay full fare or get off. A large crowd of pas-·sengers were aboard. They got off at a little station where there was no house except a little pavilion; from ·there they walked back to Augusta. The weather was ·very hot; the plaintiff was not well, and the effects of the walk put her in bed for several weeks after they ·got home. They used the same tickets that night from Augusta to Atlanta, having taken them to the agent's ·office in Augusta and had them stamped and signed. The conductor did not tell them that if they would pay ·their fare he would give them a receipt for it, and that the railroad would refund it if their tickets were good.

Fleming & Alexander and Arnold & Arnold, for plaintiff.

J. B. Cumming and Bryan Cumming, for defendant.

Bleckley, Chief Justice.

The law of this case is contained in §2068 of the ·code, which reads as follows: "A common carrier cannot limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold.

He may make an express contract and will then be governed thereby." Here the ticket was prepared in contemplation that an express contract would be made, but none was made in fact. The purchaser of the ticket was not requested to make any, and even if he had noticed the terms of the instrument he might well have concluded that the purpose indicated thereby, of having an express contract, had been abandoned by the company. It is not disputed that payment was made for transportation both ways, that is, to go to Augusta and return. This payment and its acceptance raised a legal obligation on the part of the carrier to furnish, not a part only, but the whole of the transportation paid for. It is now insisted that this legal liability was limited by an express contract which rendered the undertaking of the company with reference to return transportation conditional upon acts to be done in Augusta. The whole controversy is thus resolved into the question whether there is evidence that such a contract was made. It is quite clear that the evidence which the company intended to create was never created. There is no written evidence of such contract, and as far as the parol evidence goes it tends to disprove rather than to prove the making of any express contract whatever. The ticket was bought with an understanding that it was limited in point of time, and the attempt to use it was within that limit. After selling it and receiving pay for it without making any contract that it was to be signed, attested and stamped in Augusta, the company had no right to impose that condition upon the use of it. As to what is an express contract, and the difference between it and a contract implied in fact, see Keener on Quasi-Contracts, p. 5.                    *Judgment reversed.*