## SOUTHERN RAILWAY COMPANY *v.* WATSON.

1. While the section of the code which denies to a carrier the right to limit his legal liability by a notice or entry on receipts given or tickets sold, but declares that he may do so by express contract, applies only to carriers of goods, yet, under general law, a carrier of passengers can not limit his legal liability for the consequences of his own negligence, by such notice, or even by express contract.
2. A carrier of passengers, however, has the legal right to make reasonable rules and regulations for the conduct of its business in the transportation of passengers. When a regulation is made affixing a limit to the time in which a ticket shall be good, and the time of the limit affords to the passenger ample opportunity to make his journey

with safety and convenience to himself, such a regulation, if other-
wise reasonable, becomes a part of the contract of carriage, and if,
after the expiration of the limit of time specified on his ticket, the
passenger tenders the same for his transportation and for refusing
to pay fare is ejected from the train in a decorous and proper manner
by the conductor, such ejection affords no cause of action against
the carrier.

3. A regulation so limiting the period of transportation, when it em-
braces a provision for refunding the purchase-price of the ticket, or
any unused part thereof, if not used within the limited period, is, as.
a matter of law, held to be reasonable.

Argued October 11, 1899. — Decided June 5, 1900.

Action for damages. Before Judge Hammond. City court
of Griffin. March term, 1899.

*Charlton E. Battle* and *Searcy & Boyd,* for plaintiff in error..
*R. T. Daniel, W. H. Beck,* and *G. R. Hutchens,* contra.

LITTLE, J. Watson instituted an action against the South-·
ern Railway Company, to recover damages for being wrong-
fully ejected from one of the cars of the defendant, while a pas-
senger, on June 1, 1897. A trial of the case resulted in a ver-
dict for the plaintiff for two hundred dollars. Defendant made·
a motion for a new trial, which was overruled, and it excepted.
It appeared from the evidence that the plaintiff lived in Talla-
poosa, Ga., which was situated on one of the lines of the de-
fendant's railroad. He desired to go to Columbus, Ga., to·
which point the defendant also maintained and operated a rail-
road. Plaintiff consulted the agent of the defendant in Talla-·
poosa, and informed him that he desired to be in Columbus by
ten o'clock on the next day, and was informed by the agent that
there was no train running directly from Tallapoosa to Colum-
bus, but that he could go to Atlanta from Tallapoosa on Friday
night, and, leaving Atlanta on the early morning train, would
arrive in Columbus by nine o'clock. The agent also told plain-·
tiff that he could purchase a through ticket from Tallapoosa
to Columbus, for which there would be no reduction in the rate,
but would save him the trouble of purchasing another ticket in·
Atlanta. The agent said nothing to the plaintiff as to the kind
or character of the ticket which he would furnish him. After·
this conversation plaintiff purchased a through ticket from

Tallapoosa to Columbus, and, leaving Tallapoosa at 8:30 o'clock on Friday night, he reached Atlanta about 11 o'clock, the same night. The train for Columbus regularly left Atlanta about five o'clock in the morning. Plaintiff went to the station next morning at a very early hour, but did not take the train, because, having temporarily left the station, when he returned the train had departed. There was also a train which left Atlanta daily in the afternoon, reaching Columbus early at night. The route to Columbus from Atlanta by the Southern Railway was over its main line to McDonough, from there over the Georgia Midland division to Columbus. The cars for Columbus were attached to a train and carried to McDonough and detached. These cars were then attached to another locomotive and carried on to Columbus in charge of another conductor. Plaintiff remained in Atlanta on Saturday. On Sunday he went up to Douglasville and returned to Atlanta, and on the Tuesday morning following boarded the train for Columbus. The conductor on the train between Atlanta and McDonough declined to accept for passage the ticket which plaintiff had purchased in Tallapoosa on the Friday previous, because it was a limited ticket and the limit of time had expired. This train did not stop at any point between Atlanta and McDonough, and the conductor informed the plaintiff that the conductor from McDonough to Columbus would not accept the ticket for passage. After leaving McDonough, he presented the ticket to the second conductor, who refused to accept it for passage, and when the train reached Griffin the plaintiff was requested to leave the train. He declined to do so, and was ejected. Concerning the manner of ejection there is no complaint. Plantiff had frequently purchased tickets over the lines of the Southern Railway since 1896, but testified that he had never inspected any of those tickets to ascertain whether they were limited or unlimited. He did not know at the time it was purchased that his ticket was limited. He knew that it had holes punched in it, because he saw the agent when he made the holes, but did not look to see for what purpose they were made. After arriving at McDonough, plaintiff knew that his ticket had expired, but he thought it was possible that the conductor might

pass him on it. He was informed by the second conductor that if he would take the ticket back to Tallapoosa, where it was issued, the amount of money he paid for it would doubtless be refunded. Plaintiff testified further that, at the time he was ejected, he had sufficient money with which to pay his fare to Columbus, but not enough to pay his fare to Columbus, hotel bill, and return passage. He also testified that the limit on the ticket gave him time to go from Tallapoosa to Columbus.

It was shown that the regular fare from McDonough to Columbus was $2.94, and that all local tickets issued by the Southern Railway Company are limited tickets, and good for continuous passage only. The limit is expressed by punching out the date on the margin of the ticket. The sale of limited tickets exclusively began on May 15, 1896. Each ticket shows that it is limited, and the time in which it may be used. Notices of this regulation were posted in the ticket-windows and waiting-rooms at all of the depots, in plain, legible type, placed in conspicuous places. The ticket which the plaintiff purchased on May 28 was limited as good for use through May 29. The plaintiff paid regular fare for the ticket. It was also testified that the regulation for the adoption of limited local tickets was made by the railroad in 1896, for the reason that the limited ticket conferred benefits on the passenger and the railway company beyond those afforded by an unlimited ticket. If a passenger should lose his ticket, or have it stolen from him, and it has not been used within the time limit, the railway company refunds the amount paid to the purchaser. Without a limitation, no such refunding could be made, because it would be impossible to ascertain when the ticket might thereafter be used. The regulation was beneficial also to the railway company, because it enabled it to more properly check its accounts which include sales of tickets by agents, as well as their collection by conductors, and it also diminished the opportunity for the fraudulent manipulation of a ticket either to the injury of a passenger or the revenues of the company. It was also testified that ten or twelve tickets are daily redeemed by the defendant company. The plaintiff testified, in rebuttal, that he had never seen any of the notices in relation to the limitation of tickets, nor did he know that the ticket he purchased was limited.

There are many grounds set out in the motion for a new trial, which, if considered, would require a discussion of many questions which, under the view that we take of this case, are not material to the ascertainment of the rights of the respective parties. After all, the merits of the case must depend on a solution of the question whether one who has paid full fare for transportation between two points on a railway line, and receives a ticket which bears on its face a limitation of the time in which it may be used for passage, is bound by the terms of such limitation, in the absence of any further notice or contract. It is not necessary, for the purposes of this case, to enter into a discussion of the question whether a ticket purchased by a prospective passenger constitutes the contract of carriage between the carrier and passenger, or whether it is in law simply a token or receipt that the passage-money has been paid. Many apparently well-considered authorities go to the extent of ruling that the terms and conditions printed upon the ticket constitute the contract between the parties. Others, however, entitled to equal weight, declare that the words placed upon a ticket which the passenger receives do not constitute the contract, but that it is simply evidence of the receipt by the carrier of the passage-money, and a token that a contract of carriage has been made. The latter view seems to be more in accord with the views heretofore expressed by this court in several cases than the former. It may not be amiss, however, to remark that it is somewhat singular, admitting the ticket to be only the token of a contract, yet, when that token bears on its face statements that the contract of which it is an evidence is subject to certain limitations and conditions, that the contract is not in any way affected thereby. If in an ordinary business transaction one receives from another a sum of money as a consideration for the performance of a particular act, and as evidence of such payment issues a receipt therefor, containing stipulations as to the character and terms of the performance to be made, such terms and manner of performance, if not binding, in any event are at least prima facie evidence of conditions which are binding on both parties. But whatever may be the legal status of a ticket with reference to the contract of car-

riage, a discussion of the question would not be profitable here.

The contention made by the plaintiff in error is, that when the defendant in error contracted with it to be transported by the Southern Railway Company over its lines from Tallapoosa to Columbus, Ga., it did so on the condition that the passage was to be continuous and to be made within two days from the time of the issue of the ticket; that the time was ample within which such journey might be made with comfort and convenience; that, by reason of certain rules and regulations which the carrier had made in the conduct of its business, the passenger could not make his journey or any part of it after the expiration of two days from the date of the contract for passage, and that after such limit the ticket was void for passage. To this contention the defendant in error replies, that at the time he purchased the ticket he made no express contract with the carrier as to the time in which his journey was to be performed, but that he paid full fare for his passage; that he had no knowledge or notice, at the time that he received it, that the ticket bore on its face any limitation as to time; and that under the provisions of our law as embodied in the Civil Code, § 2276, the carrier was bound to transport him under the contract from Tallapoosa to Columbus at any time within the period governing the limitation in which such contracts may be enforced. The provisions of this section of the code are: "A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and will then be governed thereby." We do not propose to enter, here, into a discussion of the proper application of the provisions of law which the section contains. That has been done in *Central of Ga. Ry. Co.* v. *Lippman*, ante, 665. It is insisted that the rule there embodied is applicable to passenger carriers. If that be a correct proposition, then by these words of the code, as construed by the defendant in error, a passenger carrier would have the right by an express contract to limit his liability (meaning thereby his duty to exercise extraordinary diligence for the safety of the passenger). For the reasons fully given in the discussion of the legal principles involved in the case last

·cited, it is our opinion that the provisions of this section of the code do not apply in any way to a carrier of passengers, but they apply exclusively and alone to a common carrier — that is, a carrier of goods. But we go further than the point to which the argument of the defendant in error would lead, and say that in our opinion a carrier of passengers can not limit his obligation to exercise extraordinary diligence for the care of his passengers by a notice or publication, nor can he do so ·even by an express contract, because such a contract would be void, as being against public policy; for a discussion of which proposition see the case of *Central of Ga. Ry. Co.* v. *Lippman,* supra. If the plaintiff below was entitled to have a recovery against the defendant, that right existed because the railway company invaded some legal right of the plaintiff. If the ejection, which was clearly shown, was unauthorized, it was a tort ·committed upon the person of the defendant in error. On the contrary, if there was no breach of legal duty on the part of the plaintiff in error towards the passenger, then no right of recovery existed in the latter. We do not understand that the plaintiff in error in this case contends that it can limit the liability which the law imposes upon it as a passenger carrier, either by notice or by express contract. It is, however, insisted against the right of the defendant in error to sustain the verdict which was rendered in his favor, first, that all contracts of carriage made by the defendant railway company with a passenger had a time limit, in which the contract of carriage should be performed; second, that such limitation resulted from a rule and regulation which the railway company had found it necessary to make for the protection of the passenger and the orderly and successful conduct of its business as a passenger ·carrier; third, that in accordance with such rule and regulation the contract entered into with the plaintiff below limited the time in which he could be carried from Tallapoosa, Ga., to Columbus, Ga., to two days, and that this was ample time, consulting the comfort and convenience of the purchaser of the ticket, in which the journey might be made; fourth, that this rule and regulation under which the contract involved in this case was made, and the ticket issued, was fair and reasonable.

These contentions necessarily bring us to an inquiry concerning the power of a carrier of passengers to make rules and regulations for the conduct of its business. It is provided by the Civil Code, § 2278, that a carrier is bound to receive all passengers offered, that he is accustomed to carry, upon compliance with such reasonable regulations as he may adopt for his own safety and the benefit of the public. So far as we are informed, both text-writers and the rulings made in adjudicated cases are unanimous in support of the proposition that a carrier of passengers may make reasonable regulations as to the conduct of its business. Not only so, but Mr. Hutchinson declares, on authority, that the passenger takes his ticket always with the understanding that he will conform to the reasonable regulations of the carrier as to the conduct of the carriage, and that obedience to such regulations is a condition of the contract to carry, though not expressed in the contract or known to the passenger; but that the carrier can not, by regulations or usages unknown to the passenger, deprive the latter of rights conferred upon him by his ticket, which contains no notice of such limitations. Hutch. Car. § 587. It was said by Brown, J., in the case of Hibbard v. Erie R. R. Co., 15 N. Y. 455, that such regulations as will enable a railroad corporation to execute its difficult and responsible duties, insure the comfort and safety of its passengers, and protect itself from wrong and imposition, it has an undoubted right to prescribe, provided such regulations are reasonable and just. It is contended here that rules and regulations limiting the time within which a ticket shall be good for passage may be made by the carrier, and that when so made, if the time limited be reasonable, the stipulation is good in law. On this subject Mr. Hutchinson in his work on Carriers, § 576, says that "the company may lawfully limit the time within which the ticket shall be used"; for which proposition he cites 63 N. Y. 101; 54 N. Y. 512; 40 La. Ann. 47; 31 Barb. 556. In his Treatise on the Law of Railroads (vol. 3, p. 1638) Mr. Wood declares that the carrier may impose any reasonable limitation as to time; that a ticket "good only two days after date," or "for this day and train only," ceases to have any validity after that date, although it has never been

·used; citing 1 Allen, 267; 7 Hun, 607. Mr. Elliott in his Law of Railroads (vol. 4, § 1598) declares that " The right of a ·railroad company to limit the time within which a ticket over its road shall be good is well settled "; for which he cites 67 Ill. 390, 41 Ohio St. 276, and a number of other authorities in note 3 on page 2496.

We have preferred to take the terse statement of the rule laid down by these text-writers, rather than to make quotations from the authorities cited. An examination, however, of the cases which these authors have cited to support the doctrine shows that the rules enunciated are supported by the adjudications made. In the case of Elmore v. Sands, 54 N. Y. 512, quoted by Mr. Hutchinson, supra, it was said in the opinion that " Railroad companies carrying passengers have the right to make reasonable rules and regulations for conducting their business, and they and their agents incur no liability in enforcing them in a proper manner. · The passenger had his option either ·to pay upon the train or to purchase the ticket and exhibit that as evidence of his right to ride. The railroad company was not bound to issue the ticket in advance of the day on which it was to be used, and had the right to insist and provide that it should be used on the day when it was issued. " In the absence of any statutory provision which contravenes the principles ruled by the authorities to which we have referred, and the reasoning adopted by the different courts which reached the conclusion announced seeming to be sound and founded upon clear principles of right, these authorities are entitled to great weight, if, indeed, they are not satisfactorily conclusive of the question involved. But it is strongly urged upon us that the decisions of this court heretofore made, in the cases of *Phillips v. Georgia R. R. Co.,* 93 *Ga.* 356, *Boyd v. Spencer,* 103 *Ga.* 828, *Southern Railway Co.* v. *Barlow,* 104 *Ga.* 213, and *Central of Georgia Railway Co.* v. *Ricks,* 109 *Ga.* 339, are in conflict with the rulings made in the various cases to which we have referred, and opposed to the reasoning of the courts which reached the conclusion expressed. We are aware that much of the language which appears in the discussion of each of these cases will justify this criticism, and that in some of these

cases the provisions of § 2276 are recognized as applicable to carriers of passengers; but it must be borne in mind that in none of them was it insisted that the provisions there incorporated applied exclusively to common carriers — in other words, carriers of goods, and also that in no one of these cases was the question made, whether a time limit placed upon a ticket, in pursuance of a regulation, bound the passenger, as a rule of the company governing the contract of passage. On the contrary, in none of them were these questions made or decided, and no court is bound by any adjudication when it is sought to make that adjudication applicable to a question not then made or considered. Because of the defenses made in those cases, we have no criticism to make of the judgments there rendered. The ruling made in the present case is not based on the ground that section 2276 of the Civil Code does not apply to a carrier of passengers. We have in another case endeavored to show that it does not. But whether it does or not, the rulings here made do not rest on its provisions.

All the authorities which support the doctrine that a railroad company may by rules and regulations limit the time in which a ticket can be used for passage concur in the view that such regulations must be reasonable, and whether or not a regulation of this character is or is not reasonable is a question to be determined by the court. On this subject, the rule as we understand it is, that where the facts are not disputed the reasonableness of a regulation of a common carrier affecting the transportation of passengers is one of law for the court, and not of fact for the jury. 52 Ark. 406; 55 Ark. 134; 25 Fla. 40; 69 N. W. Rep. (Iowa) 532; 114 Mo. 88. See also *Central Railroad and Banking Co.* v. *B. & W. R. Co.,* 87 *Ga.* 386; *Metropolitan St. R. Co.* v. *Johnson,* 90 *Ga.* 501; *W. & A. R. Co.* v. *Moore,* 94 *Ga.* 457; *W. & A. R. Co.* v. *Bussey,* 95 *Ga.* 591. This brings us to the question next in order, that is, whether or not such a rule is reasonable. It has been so often determined that such is a reasonable rule, by the authorities cited in the foregoing part of this opinion, that the ruling which we make, that it is, is rendered very much stronger by the sanction of many eminent jurists presiding in the courts of

last resort in very many of the States of the Union. Under or-
dinary circumstances, when a plain ticket is issued without con-
ditions or limitations to a prospective passenger, that ticket
can be made nothing but a receipt or token, and only shows
that the person holding it is entitled to be transported between
certain named points, and it can not be questioned that the
holder of it may use it at his pleasure within the statutory
period for the enforcement of a contract. This right, however,·
is not without its burdens. If the ticket be lost or stolen, it
can as well be used by another as by the one who purchased
it. It can not, from any fair view, we think, be considered
unreasonable that the carrier may provide a method by which,
if a railroad ticket is lost, or if, for some unforeseen cause,
the purchaser is unable to use it within the time limit, if it
be limited, it may be redeemed, or, if the purchaser travels
only a part of the distance to which the ticket entitles him to
go, the part remaining unused may be redeemed. Certainly
such regulations provide a protection to bona fide passengers,
and as to them and to the public there can be nothing unrea-·
sonable in such regulations. On the other hand, it is but rea-
sonable that the carrier may prescribe a rule by which he may
know how many persons are to travel on a particular train dur-
ing a given day or time. It is not unreasonable for the carrier
to confine the passage contracted for to the person whom it has
contracted to carry, and it is nothing more than reasonable
that the carrier should have an opportunity to receive from all
persons who have occasion to travel over its lines the compen-
sation which the law allows it to charge; and inasmuch as it
is able, with the limitation of time, taken in connection with
the obligation of the carrier, to make a redemption of unused
or partly unused tickets when so limited, it is reasonable; not
only reasonable, but just — just not only to the carrier but to
the passenger as well. Such a regulation being, as we have
attempted to show, within the limit of the power of the carrier
to prescribe, and reasonable, there seems to exist no reason
why the rule, which was in force and promulgated at the time
the defendant in error purchased his ticket for passage, should
not be maintained.

It follows from what has been said, that the defendant in error, by reason of the rule adopted by the carrier for the transportation of passengers, was not entitled to use the ticket which had been issued to him, after the expiration of the time limit placed upon it. He should have paid his fare and caused the ticket to be redeemed. As he failed to do so, but insisted on his right to use the ticket for passage, no right of action accrued to him to recover damages for his expulsion from the train in the manner in which it was shown to have been done by the evidence in the case. The court having refused to give in charge to the jury certain requests, properly made, which embodied the views of the law which govern the case, as herein indicated, the court committed error in overruling the motion for new trial.

It is but a matter of justice for us to say here, that, in addition to the very able and comprehensive briefs submitted by the counsel in this case, we have derived much assistance from the excellent briefs of Messrs. Dorsey, Brewster & Howell and Sanders McDaniel, counsel for plaintiff in error in the case of *Southern Railway Co.* v. *Dyson*, 109 *Ga.* 103, in which the leading questions discussed here were made, but in which it was not necessary that they should be decided.

*Judgment reversed. All concurring, except Fish, J., absent.*