SAMPLES *v.* GEORGIA & FLORIDA RAILWAY COMPANY.

1. Where a railway company sold a ticket from one point to another, with a coupon attached for a return passage to the starting point, at a less rate than the regular fare, it had the right to make a reasonable regulation limiting the time within which the coupon for the return passage might be used; and if the purchaser, after the expiration of the limit of time specified on the face of the coupon for its use for return passage, boarded a train of the company and tendered the coupon in payment for transportation, refusing to pay the full fare, but offering to pay something in addition to the ticket, the company had the right to eject such person from the train, and the exercise of that right in a proper manner and at a proper place furnished no cause of action against it.

2. Where a person without a ticket authorizing him to ride upon a train enters it and refuses to pay the proper fare, he may be ejected; and, as a general rule, the carrier is not required to consult the mere convenience of such person in regard to the location, but may stop the train

and eject him at once. Nevertheless this must be done without the use of unnecessary force and in a decorous manner; and there may be special circumstances as to time, place, sex, or infirmity of the person, or the like, which would render the ejection at a particular place or in a particular manner improper and cause the carrier to be liable for damages arising therefrom.

AUGUST 13, 1915.

Action for damages. Before Judge Rawlings. Emanuel superior court. January 13, 1914.

Mrs. Fannie T. Samples brought suit against the Georgia and Florida Railway Company, alleging in substance as follows: On December 31, 1911, she purchased from the agent of the defendant company at Millen, Ga., a ticket from Millen to Stillmore, with a coupon attached thereto for a return trip. The coupon insured her return from Stillmore to Millen at any time until January 8, 1912. It was sold to her at a reduced rate, the full fare from Millen to Stillmore and return being $1.90, and she having paid for the ticket $1.50. She took passage on the train of the defendant from Millen to Stillmore on December 31, 1911, and presented her ticket to the conductor, who detached the ticket and returned the coupon to her, and she was transported to Stillmore. On January 11, 1912, she boarded the train of the defendant at Stillmore, in order to return to Millen. In a few moments after starting, the conductor called for her ticket, and she presented the coupon to him. He refused to accept it, and demanded that she pay full fare from Stillmore to Millen, amounting to ninety cents, and told her that unless she paid it he would eject her from the train. She offered to pay the difference between the reduced fare which she had paid for the ticket and coupon and the full fare from Millen to Stillmore and return, being forty cents, but this was declined. He also refused to repay to the plaintiff the amount paid by her for the ticket in excess of the fare from Millen to Stillmore, amounting to fifty-five cents. She asked him to carry her to Millen, and stated that if the agent at that point would not accept the forty cents, which she offered to pay, she would pay the full fare; but this was declined by the conductor. She then requested that the conductor, if he intended to eject her, put her off at Oak Grove church, at a public crossing about a mile from Stillmore. Instead of doing so, he carried her on across the Canoochee river about four miles from Stillmore, and put her off in the woods two or three

miles from any residence. He ejected her in an abrupt and vindictive manner, saying, "Come, get out of here," in a loud, boisterous, scolding, and commanding tone, without any provocation therefor, and took her by the arm and forced her from the train in the woods. She was thus forced to walk a distance of two or three hundred yards across the Canoochee river on a trestle, that being the only way to get to any one she knew, or to any convenient and safe point; and she was compelled to walk three or four miles. She was subjected to great humiliation, and was caused great mental pain and anguish, and, by reason of the weather being very cold, and her journey perilous and fatiguing, the shock was so severe that it produced nervous prostration and caused her great physical pain and suffering. The court dismissed the petition on general demurrer, and the plaintiff excepted.

*Williams & Bradley,* for plaintiff.

*Saffold & Jordan,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

1. In selling a ticket with a coupon for return passage to the initial point, a railroad company may fix a reasonable limitation as to the time within which such coupon must be used. *Southern Railway Co.* v. *Watson,* 110 *Ga.* 681 (36 S. E. 209). If, under a reasonable regulation of the company, the limitation as to the time within which the coupon could be used, expressed on the face of the coupon, had expired, and the purchaser nevertheless boarded the train, sought to use the expired coupon for transportation, and declined to pay the full fare of one without a ticket, the company had a right to eject her from the train, and the fact of such ejection furnished her no cause of action. *Southern Railway Co.* v. *Howard,* 111 *Ga.* 842 (36 S. E. 213). The plaintiff had no right to use the coupon, which showed on its face that it had expired, in payment or part payment of fare for her return passage from Stillmore to Millen. Her offers to pay less than the full fare between those points, and to pay full fare if the conductor would carry her to her destination and the agent at that point should decline to accept the amount which she was willing to pay, gave her no right to remain upon the train. The return coupon which she had purchased had expired, and she knew it. She was in the position of one who boards a train without a ticket, for the expired coupon was no ticket giving her any right of passage. So far, therefore, as the

suit was based upon the fact of ejection of the plaintiff from the train, it was demurrable.

2. The next question is whether the allegations as to the manner and place of the ejection set out a cause of action. In *Southern Railway Co.* v. *Watson,* supra, it was held that if the time within which a ticket could be used was limited by a reasonable regulation of the carrier, and if after the expiration of such limit the holder entered a train and tendered the expired ticket for transportation, and refused to pay fare, he could be ejected from the train "in a decorous and proper manner by the conductor." In 2 Hutchinson on Car. (3d ed.), § 1082, it is said that a passenger who refuses to obey a reasonable regulation of the carrier forfeits his right to be carried, and at once puts himself in the condition of an intruder, and may be ejected at any point upon the carrier's route at which he may choose to put him off; and that a railway carrier need not delay the removal until the train reaches a station, but may stop and expel him at once. In some States there are statutes as to the place at which the ejection may take place. In section 1083 it is said, that, even in the absence of a statute, regard must be had for the age, sex, and condition of the passenger, and the circumstances, such as the state of the weather, time of day, condition of the country, etc., for he must not be ejected at an unreasonably unsuitable place or time; and that female passengers, and passengers who are sick or suffering from some mental or physical infirmity, can not be ejected at times or places where the carrier should know that their sex or condition would especially expose them to insult or injury. In section 1084 it is declared that, in general, it may be said that while the carrier may not be required to pay regard to the mere convenience of the passenger, when he has forfeited his right to be carried by his misconduct or refusal to comply with his regulations, the carrier can not eject him in such manner as to endanger his safety, as by ejecting him while the train is in motion, or in a dangerous place, without liability for the consequences. To this the author adds that the carrier can not use more force than may be necessary, and that, if unnecessary violence be used, it will be no defense that the passenger has offended against the reasonable rules of the carrier, and has thereby subjected himself to the carrier's right to expel him. And it is said that "not only the unnecessary force, but any circum-

stances of insult or indignity in the manner of expulsion, may be shown in an action by the passenger." See also Elliott on Railroads (2d ed.), §§ 1598, 1637. In Jackson v. Alabama etc. R. Co., 76 Miss. 703 (25 So. 353), a female took passage on a train at night at a flag-station, without procuring a ticket, as there was no ticket-office at that place, but believing that she had more money than was requisite to pay her fare to her destination. Soon after the train had left the flag-station, the plaintiff was approached by the conductor and requested to pay her fare. She vainly searched for the money which she had on her person when she boarded the train, and informed the conductor that she had lost it in getting on the train or after doing so. Failing to find it, she was immediately ejected from the train at a point about one mile east of the flag-station and about three miles west of the next station. The night was dark, cold, and rainy; and the place of her ejection was in a swamp, with water on the sides of the track and remote from any habitation. She urged the conductor not to eject her there, but without avail. She made her way back on foot to the flag-station, and, finding no one there, and no place of shelter, she continued her walk to her father's house, three or four miles away. As a result she became sick. It was held that the declaration stated a cause of action. The court said: "The question is not whether a railway company has the right to eject one from its train who has neither a ticket nor the means of paying fare. That is universally conceded. The question is whether, at the time and place and under the circumstances, the right of ejection in this instance was properly exercised."

In the case at bar the company had the right to eject the plaintiff from its train. But it could not do this without regard to the place where or the manner in which it was done. It was alleged, that when the conductor informed the plaintiff that he would have to eject her unless she paid full fare, she requested that he would put her off at a public crossing about a mile from the starting point, but that, instead of doing so, he carried her three or four miles from the point from which she started, crossing a river, and put her off in the woods two or three miles from any residence; that she was thereby forced to walk across the river on a trestle, a distance of two or three hundred yards, and to walk in all three or four miles through a country unknown to her, she being a resident

of another State; that the manner of the conductor was abrupt; that in a loud, boisterous, scolding, and commanding tone, without any provocation, he commanded her to "Come, get out of here," and took her by the arm and forced her from the train; that the plaintiff was further subjected to great humiliation and caused great mental anguish and pain; and that, by reason of the weather being cold, and her journey on foot being perilous and fatiguing, the shock was so severe that it produced nervous prostration, and caused 'her great physical pain and suffering. These allegations were sufficient to show that the right of ejection was exercised in an improper manner and at an improper place; and they were not subject to general demurrer. Accordingly, it was error to dismiss the action on such demurrer. Under the allegations of the petition, this case is not controlled by the decision in *Chapman* v. *Western Union Tel. Co.,* 88 *Ga.* 763 (15 S. E. 901, 17 L. R. A. 430, 30 Am. St. R. 183), or in *Williamson* v. *Central of Georgia Ry. Co.,* 127 *Ga.* 125 (4*a*), 126 (56 S. E. 119), or by similar rulings.

*Judgment reversed. All the Justices concur.*