## 6299.  SHOENIG *v.* ATLANTIC COAST LINE RAILROAD CO.

1. Where one purchases from a railroad company at a reduced rate an excursion-ticket which has on its face a stipulation that it shall be good for passage only on trains scheduled to reach his destination on or before a certain day and hour, and he uses it for passage on a train not scheduled to reach that place until after the expiration of that time, and the time limit expires while he is on the train, the ticket does not entitle him to passage beyond the point at which the limit expired.
2. One who purchased such a ticket at T., for transportation from that place to S. and return, could not maintain an action against the carrier for refusal to recognize the ticket as good for passage to T. from an intermediate point which the train reached after the time limit of the ticket had expired, notwithstanding a ticket agent of the carrier at S., before the passenger's return, made a representation to her to the effect that the ticket could be used for passage to T. on that particular train; it not appearing that this agent had authority to alter the original contract.

DECIDED NOVEMBER 19, 1915.

Action for damages; from city court of Thomasville—Judge W. H. Hammond.   December 21, 1914.

The petition alleged, that the plaintiff purchased at Thomasville, Georgia, from the Atlantic Coast Line Railroad Company, for a price less than the regular fare, a ticket for a round-trip excursion from that point to Savannah, Georgia, and return, "the return scheduled to reach the said city of Thomasville on or before 12:00 (midnight), August 31st, 1914;" the ticket being sold to her at a reduced rate "because the same was issued for a round trip, and limited as to its effective date," as above stated. The plaintiff was duly transported by the defendant company to Savannah, and

on Sunday, August 30, 1914, she went in person to the ticket agent of the defendant company, in charge of the ticket office in the station used by the said railroad company at that place, and who sold tickets and represented the said company at said station, and requested him to inform her "which would be the last train on which she could leave Savannah in order to comply with the conditions of limitation placed upon said ticket as aforesaid;" that the said agent then and there replied that she should leave Savannah on her return trip to Thomasville and use her said ticket on the passenger-train of the said railroad company which left said station at 6 :40 p. m., central time, Monday afternoon, August 31st, 1914; that on the 28th of August, 1914, the plaintiff was instructed by the said agent, through a person sent to him by her for information, "that she could leave Savannah, Georgia, upon a passenger-train of said railroad company leaving said station on August 31st, 1914, at 6 :40 p. m., central time, for Thomasville, Georgia, using said ticket for her transportation;" that relying upon the instructions given her by the said agent of the defendant company, and in the absence of any knowledge on the subject, the plaintiff left Savannah on the afternoon of August 31, 1914, upon the said train of the defendant company, designated by its said agent; that her ticket was accepted by the conductor for her passage to Waycross, Georgia, a point en route, "where a change of cars was made to a train known as number 57" of the said defendant company, which was its first train leaving Waycross for Thomasville after the plaintiff's arrival at Waycross; that upon leaving Waycross on said train number 57, the plaintiff tendered to the conductor in charge of said train her said ticket for passage thereon, and he received said ticket and punched it, but stated to the plaintiff that she must pay fare to Thomasville from whatever point was reached by the train at midnight of that day (August 31). The petition alleged further, that this particular train "was not scheduled to reach Thomasville, Georgia, until after midnight August 31st, 1914," and the plaintiff told the conductor the instructions she had received from the ticket agent in Savannah, and that she had no money to pay the additional fare demanded; whereupon he replied "that he did not care, but that she would either have to pay the additional fare, or get off the train;" that the conductor left the plaintiff, but returned in 20 or 30 min-

utes and offered her back the said ticket which he had previously accepted and punched, but she declined to receive the same and the conductor retained it, and demanded in addition that she pay $1.35 or $1.40, or, in default of this payment, that she leave the train; that she yielded to the conductor's demand and paid him all the money which she had in her possession, 90 or 95 cents, and he thereupon permitted her to continue on the train, in consideration of her promise to procure the balance of the money demanded, upon her arrival at Thomasville, and pay the same to him; that upon reaching Thomasville he permitted her to leave the car, but followed her about the station until she ultimately found a person from whom she could procure the necessary amount, and, upon receiving this balance, released her from his surveillance. The plaintiff alleged that the defendant had injured and damaged her in the sum of $1,000, for that the treatment she was subjected to by the defendant through its conductor upon the said train number 57 and in and about the station in Thomasville, Georgia, inflicted humiliation, indignity, and mental suffering upon her.

The petition was demurred to generally and specially. The court sustained the general demurrer and dismissed the case, and to this ruling the plaintiff excepted.

*Snodgrass - & MacIntyre*, for plaintiff.

*Bennet & Branch, J. H. Merrill*, for defendant.

WADE, J. (After stating the foregoing facts.) The plaintiff contends that her petition was good as against a general demurrer, and that in order for a passenger to recover for wrongful expulsion from a train, it is not necessary that the conductor should have put his hands on the passenger *(Central Railroad Co.* v. *Roberts,* 91 *Ga.* 513, 514, 18 S. E. 315), since "the defendant company owed the duty to the plaintiff to carry her safely and properly to her destination, and under this obligation she was entitled to be treated respectfully." *Mabry* v. *City Electric Railway Co.,* 116 *Ga.* 624, 625 (42 S. E. 1025, 59 L. R. A. 590, 94 Am. St. R. 141). From the petition it does not appear that any language calculated to wound the feelings of the plaintiff or to embarrass or humiliate her to any extent was used by the conductor, unless his reply, when she told him that she had no money with which to pay the additional fare, that "he did not care, but that she would either have to pay the additional fare, or get off the train," should be so con-

strued; and it is not alleged that this language was heard by any person other than the plaintiff, or that the manner of the conductor when using it was discourteous, rude, or peremptory. The plaintiff was not subjected to any indignity whatever, but, to the contrary, it appears from her petition that the conductor accepted from her the amount of money she offered in part payment of the additional fare, and permitted her to remain on the train to destination, accepting her promise that she would procure the small balance of 45 or 50 cents; and it is not alleged that upon arrival at her destination the conductor was offensive to her in any way, but it appears that he merely followed her into the station and remained near her until she found an acquaintance, borrowed the necessary amount, and discharged the obligation in accordance with her promise. The plaintiff urges, however, that even if the conductor had addressed her with all the suavity of a Talleyrand, and displayed the tact and consideration of a Chesterfield, and though he may have obtruded his presence upon her no more than was necessary to collect the additional fare, nevertheless she was entitled to a ride in the car, and the threat of expulsion, no matter in what words it may have been couched, constituted a breach of the duty which the company owed to her as a passenger, and gave her a right of action therefor.

Our Supreme Court, in *Georgia Railway & Electric Co.* v. *Baker,* 125 *Ga.* 562, 569 (54 S. E. 639, 7 L. R. A. (N. S.) 103, 114 Am. St. R. 246, 5 Ann. Cas. 484), held, that though the conductor simply complied with what he understood to be the rules and regulations of the company by which he was employed, and "in complying with these rules, although he might have had the manner of a perfect gentleman, and used language which would be proper in the most polite society, still, if the plaintiff had a right to ride upon the car, and was threatened with expulsion, no matter in what words, it was a breach of the duty which the company owed her as a passenger, and gave her a right of action against the company;" and further, that if the conductor "made a mistake and used a threat to expel a passenger who had a right to ride on the car, the company would be liable, without reference to the manner in which he made the threat and his good faith in the matter." In the 4th headnote of the decision it is stated that "in an action brought to

23

recover damages for a threat to expel a passenger from a street-car, who presented a transfer to the conductor which was defective through no fault of the plaintiff, but who, under the facts of the case, was entitled to a ride on the car, the measure of damages is not limited to the amount paid to prevent expulsion, but general damages may be recovered as for an inexcusable trespass, even though there be no aggravating circumstances connected with the threat of expulsion." Conceding that if the conductor was without authority to demand the additional fare or to expel the plaintiff from the train in the event of her failure to meet the demand, the plaintiff would be entitled to recover the actual damages she suffered, as well as such damages as the enlightened conscience of an impartial jury might think proper to allow on account of her wounded feelings, it would appear not only that the actual damages would be practically insignificant in this case, but that the circumstances in connection with the threat to eject her from the train could scarcely call for any severe punishment in the shape of punitive damages. *Savannah Electric Co.* v. *Badenhoop*, 6 *Ga. App.* 371, 375, 376 (65 S. E. 50). However, for the purposes of this case it is necessary to consider whether the plaintiff, under the allegations made in her petition, was entitled to recover any amount whatever; for if so, the court erred in sustaining the general demurrer.

It is thoroughly well settled that "a carrier is entitled to limit the use of an excursion ticket, sold at a reduced rate, to any particular train or trains." 2 Michie on Carriers, § 2222. "A ticket issued without limitation is good for use at any time within the period prescribed by the statute of limitations for similar contracts. But the carrier may lawfully limit the time within which the ticket shall be used, although such a limitation will be construed most strongly against the carrier." 2 Hutchinson on Carriers, § 1043. However, in the same paragraph, the same authority lays down the following rule: "When tickets are sold at reduced rates, the purchaser should, in consideration of such reduced fare or greater privileges, expect and look for some conditions, limitations, and terms different from those attaching to tickets generally, and be on his guard to become informed on them." And further, in the same section, it is said: "In contract tickets which no person who could read could glance at without seeing that they purport to gov-

ern the relation of carrier and passenger in detail, the ordinary purchaser is presumed to look for such limitations. But even in the latter case the limitations must be supported by an adequate consideration in the shape of a reduced rate, or otherwise." See also: *Central Railway Co.* v. *Ricks,* 109 *Ga.* 339 (34 S. E. 570); *Central Railway Co.* v. *Lippman,* 110 *Ga.* 665 (36 S. E. 202, 50 L. R. A. 673); *Southern Railway Co.* v. *Watson,* 110 *Ga.* 681 (36 S. E. 209); *Southern Railway Co.* v. *Howard,* 111 *Ga.* 842 (36 S. E. 213); *Samples* v. *Georgia & Florida Railway Co.,* 143 *Ga.* 805 (85 S. E. 1002). In the case of *Central Railway Co.* v. *Ricks,* supra, the Supreme Court held: "One who purchased a railway-ticket having upon its face an express stipulation that it would be good for passage only during a specified period of time, and who in consideration of its being sold to him at a reduced rate assented to this stipulation, had no lawful cause of complaint against the railway company for ejecting him from a train, after the expiration of that period, upon his refusal to pay fare." This ruling was expressly referred to and adhered to in *Central Railway Co.* v. *Lippman,* supra.

From the petition it is to be inferred that the ticket purchased by the plaintiff at a reduced rate for an excursion from Thomasville, Georgia, to Savannah, Georgia, and return, was by its express terms limited to such trains of the defendant company as were "scheduled to reach the city of Thomasville on or before 12:00 (midnight), August 31st, 1914." From the allegation in the petition that the "return" provided for by the special ticket was "scheduled" to reach Thomasville on or before midnight August 31st, 1914, it must be inferred that the ticket constituting the contract between the carrier and the passenger expressly stipulated that the passenger must complete the return journey to Thomasville on or before the time stated, or that the ticket would only be effective on the railroad of the defendant company up to the hour and date mentioned. Since, therefore, such a contract is legal, and (under the various rulings of the Supreme Court above referred to, and especially under the ruling in the *Ricks* case) the plaintiff could not be heard to complain if, upon failure on her part to pay additional fare on demand after the expiration of the time limit, she had been ejected from the train in an orderly and sufficiently considerate manner, it only remains to determine

whether the representations made by the agent of the defendant company in Savannah, in response to her inquiry, to the effect that she could leave that place at 6:40 p. m. on Monday the 31st of August, 1914, on a train of the defendant, and use her excursion ticket in returning to Thomasville, notwithstanding the train would reach the latter point after midnight on that date, would relieve her from the contract between herself and the defendant, represented and implied by the limited ticket and her acceptance thereof in consideration of reduced fare.

Knowledge on the part of the plaintiff, concerning the stipulations as to the time limit provided for in the ticket itself, must necessarily be inferred from the allegations in her petition. It has been held that where a ticket is conditioned as to the time in which it must be used, the condition is complied with when the journey is *commenced* within the time limit, although the time to which it is limited may expire before the actual completion of the journey. According to the allegations in the petition in the instant case, however, the only reasonable conclusion that can be drawn is that the ticket by its express terms imposed a limitation more strict than would be implied by a provision that it should be *used* before a certain fixed time, since it is alleged that the return was scheduled for a train reaching Thomasville before 12 o'clock, midnight, on the day named. This would reasonably carry with it a condition that the passenger must leave Savannah on her return trip at such a time as would enable her to *complete* the entire journey and arrive at Thomasville at or before the expiration of the time limit fixed by the ticket.

It is insisted by the plaintiff that she was authorized to rely on the information given her by the ticket-agent at Savannah as to the train upon which she could leave that city and safely use her limited excursion ticket, and the case of *Atkinson* v. *Southern Railway Co.,* 114 *Ga.* 146 (39 S. E. 888, 55 L. R. A. 223), is relied upon to support this contention. In that case the Supreme Court held: "If a ticket seller of a railroad company sells a ticket for passage on a particular train, assuring the purchaser that the train will stop at the station at which he desires to alight, he may recover damages from the company if expelled from the train by the conductor solely on the ground that the train does not stop at the station in question, unless the purchaser knew or had reason

to believe that the information given him by the ticket-agent was incorrect, or that there was a rule or regulation of the company making the agent incompetent to give the information, prohibiting the conductor from stopping the train at that station." It will be noticed that the agent who made the representation in the *Atkinson* case, supra, was the agent who sold the ticket to the plaintiff and upon whose information the plaintiff was authorized to rely, since nothing appears from which we can infer that the plaintiff sought information from the ticket-agent concerning any unusual schedule or any special or unusual kind of ticket, but apparently only an ordinary ticket was purchased to a point on that particular railroad, concerning which the agent should reasonably have had knowledge. The court said: "When a railroad company places an agent in charge of its business at a place where passengers are expected to board its trains, and authorizes such agent to sell tickets to passengers to be used when taking passage upon its trains, one who purchases from such an agent a ticket *upon which there is no statement as to what trains it will or will not be good for passage upon* [italics ours] has a right to presume that the agent is authorized by the company to give him information on this subject." It will be observed that this ruling is placed in terms upon the fact that the ticket itself contains "no statement as to what trains it will or will not be good for passage upon." As already said, from the petition in this case, it must be inferred (construing the petition most strongly against the pleader) that the ticket itself explicitly declared that it was only good up to midnight on August 31, 1914, or in other words, it was expressly stipulated that the ticket would *not* be good after midnight on the date mentioned. The agent in Savannah from whom the plaintiff obtained the information that she could use the limited ticket on the train leaving at 6:40 p. m. on the 31st of August, 1914, was not the agent who sold the ticket, and did not, at the time the contract was originally entered into between the plaintiff and the defendant company, interpret or explain it to her, and the ticket was not a usual or ordinary ticket. The petition does not explicitly allege that the defendant's agent in Savannah told her that the ticket would be good for the entire journey from Savannah to Thomasville, if first presented by her on the train which left Savannah at 6:40 p. m. on August 31, 1914, or that this particular train was scheduled to reach or would reach

Thomasville before midnight on that day; it alleges merely that the agent informed her that she could leave Savannah, on her return trip to Thomasville, on the passenger-train of the defendant which left the Savannah station for Thomasville at 6:40 p. m. on August 31, 1914, "using said ticket;" and further, that the agent informed her through a third person that she could leave at 6:40 on August 31, 1914, for Thomasville, "using said ticket for her transportation;" and, so far as appears, this amounted to no more than an expression of his individual opinion as to the legal effect of the contract already made, and the sufficiency of the ticket for her transportation to destination even after the expiration of the time limit therein expressed, provided the journey were commenced before the expiration of the limit, as in ordinary cases.

Since the contract between the plaintiff and the railroad company was represented by a ticket which by its terms expressly limited the period within which it could be effectively used, the plaintiff can not complain that other and different representations were made to her by the agent in Savannah, by which she was misled. Such representations, being plainly in violation of the unambiguous terms of the contract of carriage, should not properly have misled her; and, since the matter was fixed by contract, she should have relied on the contract alone, and not upon subsequent representations made by one whose authority to vary the contract or to construe it in direct contravention of its precise terms nowhere appears from any allegation in the petition.

In the *Atkinson* case, supra, and again in the *Roberts* case, supra, the Supreme Court held in effect that a passenger may rely upon representations of the agent selling him the ticket, made at the time of the sale, where the ticket itself is silent as to the train upon which the passenger can ride, as such representations then became a part of the contract of carriage. Here, however, the ticket itself stipulated a time limit, and the representations made to the plaintiff directly contravened its express terms, were made after the contract had been entered into between the plaintiff and the defendant company, were made by a person other than the one who originally negotiated or completed the contract in behalf of the defendant, and by one who had no authority (so far as appears from the petition) to make a new contract, extending the time of the plaintiff's return, without any additional consideration what-

ever, and to thus enlarge the limitation in the original contract. We find no direct authority upon the precise point in Georgia, but the following rule, set out in 4 Ruling Case Law, § 578, p. 1132, appears to us sound and reasonable: "Where, however, the time is plainly limited by the ticket itself, it has been held that a representation by the agent subsequently to the sale thereof will not have the effect of extending the time limit on its face, in the absence of proof that the agent has authority to change the contract as expressed by the ticket." See also the following cases cited to support this statement: Pennington v. Illinois Cen. R. Co., 252 Ill. 584 (97 N. E. 289, 37 L. R. A. (N. S.) 983, citing 31 L. R. A. (N. S.) 231, note). And see Elliott v. Southern Pac. R. Co., 145 Cal. 441 (79 Pac. 420, 68 L. R. A. 393); McClure v. Philadelphia &c. R. Co., 34 Md. 532 (6 Am. R. 345).

A clear distinction appears to exist between an agent's representations made at the time of selling a ticket, and subsequent representations of an agent of the same company in regard thereto. It has, however, been held that where the time was limited by the ticket, the contract could not be varied by showing a contemporaneous parol agreement with the agent as to a different time. Gulf &c. Co. v. Daniels (Tex. Civ. App.), 29 S. W. 426. In Elliott v. Southern P. Co., supra, it was held that where a return ticket was limited in time, and the trains had been held up by a strike, the statement of the agent *at the return point* that the ticket would be good when the trains did start, was not a waiver of a stipulation as to time, in the absence of a showing of his authority to make such a waiver, the court calling attention to the fact that the statement was *not* made contemporaneously with the contract, but was made two days later. A representation as to the time limit of a ticket, made by the agent subsequently to the sale thereof, was held not to have the effect of extending the time limited on the face of the ticket (Hanlon v. Illinois C. R. Co., 109 Iowa, 136, 80 N. W. 223), since the agent had no such implied power; and in Boice v. Hudson River R. Co., 61 Barb. 611, it was held that the company would not be bound by such a representation, in the absence of proof that the agent had authority to change the contract as expressed by the ticket. In Pennington v. Illinois Central Railroad Co., 252 Ill. 584 (97 N. E. 289, 37 L. R. A. (N. S.) 983), it was held: "The agent who sells a ticket which, by its terms, must

be used on the day of sale or be void has no implied authority to bind the carrier by agreeing, after it has expired, that it may be used on a subsequent day." "It is also usually held to be within the implied power of a ticket agent to bind the company by his representations concerning the route to be taken by a passenger; as to what trains the ticket will be good for passage upon, at least, in the absence of knowledge on the part of the passenger that such information was incorrect, or of anything on the ticket to indicate on what trains it would be good." 4 Ruling Case Law, § 578, p. 1133. See also the following cases there cited: Southern R. Co. *v.* Nowlin, 156 Ala. 222 (47 So. 180, 130 Am. St. R. 91); Illinois Cen. R. Co. *v.* Harper, 83 Miss. 560 (35 So. 764, 64 L. R. A. 283, 102 Am. St. R. 469); Mace *v.* Southern Ry. Co., 151 N. C. 404 (66 S. E. 342, 24 L. R. A. (N. S.) 1178, and note); St. Louis Southwestern R. Co. *v.* White, 99 Tex. 359 (89 S. W. 746, 2 L. R. A. (N. S.) 110, 122 Am. St. R. 631, 13 Ann. Cas. 965); 31 L. R. A. (N. S.) 231, note; *Atkinson* v. *Southern Ry. Co.,* supra; Louisville &c. R. Co. *v.* Scott, 141 Ky. 538 (133 S. W. 800, 34 L. R. A. (N. S.) 206, Ann. Cas. 1912C, 547).

It will be recalled that in this case, while the petition alleged lack of knowledge on the part of the passenger that the information given her by the agent in Savannah was incorrect, it sufficiently appears that the ticket itself clearly indicated that it would only be accepted for her transportation on trains reaching Thomasville before 12 o'clock on the night of August 31, 1914; or, in other words, the ticket itself indicated on what trains it would be good.

Certainly, if the agent who sells the ticket can not subsequently to the sale make a representation which would extend the time limit and bind the carrier, much less could another agent, at a different point on its line and without any apparent special authority to alter the original contract, make a representation or agreement which would have the effect of extending the limit fixed by the contract, or of otherwise changing the contract as set forth in the ticket.

If it were possible for an agent other than the agent who issued the ticket, and despite express stipulations or limitations therein, based upon a reduced rate of transportation, to alter the conditions of the contract or extend the limit fixed thereby, the practical result would be to compel carriers of passengers to refrain altogether

from issuing limited excursion tickets at a rate less than the regular rate; as otherwise many of the traveling public might claim such extension on tickets of this character (issued for a less price solely on account of the express limitation therein), and railroads be compelled to accept such limited tickets on regular trains and after the limit had expired, or else incur liability for a refusal to do so, though such acceptance might be in plain violation of some rate regulation fixed by law.

The trial judge did not err in sustaining the general· demurrer and dismissing the petition.      *Judgment affirmed.*